# SUPREME COURT OF THE UNITED STATES

## SHAWN PATRICK LYNCH *v.* ARIZONA

### ON PETITION FOR WRIT OF CERTIORARI TO THE SUPREME COURT OF ARIZONA

No. 15–8366.   Decided May 31, 2016

PER CURIAM.

Under *Simmons* v. *South Carolina*, 512 U. S. 154 (1994), and its progeny, "where a capital defendant's future dangerousness is at issue, and the only sentencing alternative to death available to the jury is life imprisonment without possibility of parole," the Due Process Clause "entitles the defendant 'to inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel.'" *Shafer* v. *South Carolina*, 532 U. S. 36, 39 (2001) (quoting *Ramdass* v. *Angelone*, 530 U. S. 156, 165 (2000) (plurality opinion)).   In the decision below, the Arizona Supreme Court found that the State had put petitioner Shawn Patrick Lynch's future dangerousness at issue during his capital sentencing proceeding and acknowledged that Lynch's only alternative sentence to death was life imprisonment without parole.  238 Ariz. 84, 103, 357 P. 3d 119, 138 (2015).   But the court nonetheless concluded that Lynch had no right to inform the jury of his parole ineligibility. *Ibid.*  The judgment is reversed.

A jury convicted Lynch of first-degree murder, kidnapping, armed robbery, and burglary for the 2001 killing of James Panzarella.  The State sought the death penalty. Before Lynch's penalty phase trial began, Arizona moved to prevent his counsel from informing the jury that the only alternative sentence to death was life without the possibility of parole.  App. K to Pet. for Cert.  The court granted the motion.

Lynch's first penalty phase jury failed to reach a unanimous verdict.  A second jury was convened and sentenced

Lynch to death. On appeal, the Arizona Supreme Court vacated the sentence because the jury instructions improperly described Arizona law. The court did not address Lynch's alternative argument that the trial court had violated *Simmons.* On remand, a third penalty phase jury sentenced Lynch to death.

The Arizona Supreme Court affirmed, this time considering and rejecting Lynch's *Simmons* claim. The court agreed that, during the third penalty phase, "[t]he State suggested . . . that Lynch could be dangerous." 238 Ariz., at 103, 357 P. 3d, at 138. The court also recognized that Lynch was parole ineligible: Under Arizona law, "parole is available only to individuals who committed a felony before January 1, 1994," and Lynch committed his crimes in 2001. *Ibid.* (citing Ariz. Rev. Stat. Ann. §41–1604.09(I)). Nevertheless, while "[a]n instruction that parole is not currently available would be correct," the court held that "the failure to give the *Simmons* instruction was not error." 238 Ariz., at 103, 357 P. 3d, at 138.

That conclusion conflicts with this Court's precedents. In *Simmons*, as here, a capital defendant was ineligible for parole under state law. 512 U. S., at 156 (plurality opinion). During the penalty phase, the State argued that the jurors should consider the defendant's future dangerousness when determining the proper punishment. *Id.*, at 157. But the trial court refused to permit defense counsel to tell the jury that the only alternative sentence to death was life without parole. *Id.,* at 157, 160. The Court reversed, reasoning that due process entitled the defendant to rebut the prosecution's argument that he posed a future danger by informing his sentencing jury that he is parole ineligible. *Id.*, at 161–162; *id.*, at 178 (O'Connor, J., concurring in judgment). The Court's opinions reiterated that holding in *Ramdass*, *Shafer*, and *Kelly* v. *South Carolina*, 534 U. S. 246 (2002).

The Arizona Supreme Court thought Arizona's sentenc-

ing law sufficiently different from the others this Court had considered that *Simmons* did not apply. It relied on the fact that, under state law, Lynch could have received a life sentence that would have made him eligible for "release" after 25 years. 238 Ariz., at 103–104, 357 P. 3d, at 138–139; §13–751(A). But under state law, the only kind of release for which Lynch would have been eligible—as the State does not contest—is executive clemency. See Pet. for Cert. 22; 238 Ariz., at 103–104, 357 P. 3d, at 138–139. And *Simmons* expressly rejected the argument that the possibility of clemency diminishes a capital defendant's right to inform a jury of his parole ineligibility. There, South Carolina had argued that the defendant need not be allowed to present this information to the jury "because future exigencies," including "commutation [and] clemency," could one day "allow [him] to be released into society." 512 U. S., at 166 (plurality opinion). The Court disagreed: "To the extent that the State opposes even a simple parole-ineligibility instruction because of hypothetical future developments, the argument has little force." *Ibid.*; *id.,* at 177 (opinion of O'Connor, J.) (explaining that the defendant had a right "to bring his parole ineligibility to the jury's attention" and that the State could respond with "truthful information regarding the availability of commutation, pardon, and the like").

The State responds that *Simmons* "'applies only to instances where, as a legal matter, there is *no possibility* of parole.'" Brief in Opposition 11 (quoting *Ramdass*, 530 U. S., at 169 (plurality opinion)). Notwithstanding the fact that Arizona law currently prevents all felons who committed their offenses after 1993 from obtaining parole, 238 Ariz., at 103, 357 P. 3d, at 138, Arizona reasons that "nothing prevents the legislature from creating a parole system in the future for which [Lynch] would have been eligible had the court sentenced him to life with the possibility of release after 25 years." Brief in Opposition 12.

Per Curiam

This Court's precedents also foreclose that argument. *Simmons* said that the potential for future "legislative reform" could not justify refusing a parole-ineligibility instruction. 512 U. S., at 166 (plurality opinion). If it were otherwise, a State could always argue that its legislature might pass a law rendering the defendant parole eligible. Accordingly, as this Court later explained, "the dispositive fact in *Simmons* was that the defendant conclusively established his parole ineligibility under state law at the time of his trial." *Ramdass*, *supra*, at 171 (plurality opinion). In this case, the Arizona Supreme Court confirmed that parole was unavailable to Lynch under its law. *Simmons* and its progeny establish Lynch's right to inform his jury of that fact.

The petition for writ of certiorari and the motion for leave to proceed *in forma pauperis* are granted. The judgment of the Arizona Supreme Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

## SHAWN PATRICK LYNCH *v.* ARIZONA

ON PETITION FOR WRIT OF CERTIORARI TO THE SUPREME
COURT OF ARIZONA

No. 15–8366.   Decided May 31, 2016

JUSTICE THOMAS, with whom JUSTICE ALITO joins,
dissenting.

Petitioner Shawn Patrick Lynch and his co-conspirator,
Michael Sehwani, met their victim, James Panzarella, at a
Scottsdale bar on March 24, 2001.  The three went back to
Panzarella's house early the next morning.  Around 5 a.m.,
Sehwani called an escort service.  The escort and her
bodyguard arrived soon after.  Sehwani paid her $300 with
two checks from Panzarella's checkbook after spending an
hour with her in the bedroom.  Lynch and Sehwani then
left the house with Panzarella's credit and debit cards and
embarked on a spending spree.

The afternoon of March 25, someone found Panzarella's
body bound to a metal chair in his kitchen.  His throat was
slit.  Blood surrounded him on the tile floor.  The house
was in disarray.  Police discovered a hunting knife in the
bedroom.  A knife was also missing from the kitchen's
knifeblock.  And there were some receipts from Lynch and
Sehwani's spending spree.

Police found Lynch and Sehwani at a motel two days
after the killing.  They had spent the days with Panzarel-
la's credit and debit cards buying cigarettes, matches, gas,
clothing, and Everlast shoes, renting movies at one of the
motels where they spent an afternoon, and making cash
withdrawals.  When police found the pair, Sehwani wore
the Everlast shoes, and Lynch's shoes were stained with
Panzarella's blood.  A sweater, also stained with his blood,
was in the back seat of their truck, as were Panzarella's
car keys.

A jury convicted Lynch of first-degree murder, kidnaping, armed robbery, and burglary, and ultimately sentenced him to death.*  But today, the Court decides that sentence is no good because the state trial court prohibited the parties from telling the jury that Arizona had abolished parole.  *Ante,* at 1; see Ariz. Rev. Stat. Ann. §41–1604.09(I) (1999).  The Court holds that this limitation on Lynch's sentencing proceeding violated *Simmons* v. *South Carolina*, 512 U. S. 154 (1994).  Under *Simmons*, "[w]here the State puts the defendant's future dangerousness in issue, and the only available alternative sentence to death is life imprisonment without possibility of parole, due process entitles the defendant to inform the capital sentencing jury—by either argument or instruction—that he is parole ineligible."  *Id.,* at 178 (O'Connor, J., concurring in judgment).

Today's summary reversal perpetuates the Court's error in *Simmons*.  See *Kelly* v. *South Carolina*, 534 U. S. 246, 262 (2002) (THOMAS, J., dissenting); *Shafer* v. *South Carolina*, 532 U. S. 36, 58 (2001) (THOMAS, J., dissenting).  As in *Simmons*, it is the "sheer depravity of [the defendant's] crimes, rather than any specific fear for the future, which induced the . . . jury to conclude that the death penalty was justice."  512 U. S., at 181 (Scalia, J., dissenting).  In *Simmons*, for example, the defendant beat and raped three elderly women—one of them his own grandmother—before brutally killing a fourth.  See *ibid.*  The notion that a jury's decision to impose a death sentence "would have been altered by information on the *current state of the law* concerning parole (which could of course be amended) is . . . farfetched," to say the least.  *Id.,* at 184.

---

*Sehwani ultimately pleaded guilty to first-degree murder and theft and received a sentence of natural life without the possibility of early release plus one year.  See 225 Ariz. 27, 33, n. 4, 234 P. 3d 595, 601, n. 4 (2010).

Worse, today's decision imposes a magic-words require-
ment. Unlike *Simmons*, in which there was "no instruc-
tion at all" about the meaning of life imprisonment except
that the term should be construed according to its "'[plain]
and ordinary meaning,'" *id.,* at 160, 166 (plurality opin-
ion), here there was an instruction about the nature of the
alternative life sentences that the trial court could impose:

> "If your verdict is that the Defendant should be sen-
> tenced to death, he will be sentenced to death. If your
> verdict is that the Defendant should be sentenced to
> life, he will not be sentenced to death, and the court
> will sentence him to either life without the possibility
> of release until at least 25 calendar years in prison
> are served, or 'natural life,' which means the Defend-
> ant would never be released from prison." App. S to
> Pet. for Cert. 18.

That instruction parallels the Arizona statute governing
Lynch's sentencing proceedings. That statute prescribed
that defendants not sentenced to death could receive
either a life sentence with the possibility of early release
or a "natural life" sentence: "If the court does not sentence
the defendant to natural life, the defendant shall not be
released on any basis until the completion of the service of
twenty-five calendar years," but a defendant sentenced to
"natural life" will "not be released on any basis for the
remainder of the defendant's natural life." Ariz. Rev. Stat.
Ann. §13–703(A) (2001).

Even though the trial court's instruction was a correct
recitation of Arizona law, the Court holds that *Simmons*
requires more. The Court laments that (at least for now)
Arizona's only form of early release in Arizona is executive
clemency. *Ante,* at 3. So the Court demands that the
Arizona instruction specify that "the possibility of release"
does not (at least for now) include parole. Due process, the
Court holds, requires the court to tell the jury that if a

defendant sentenced to life with the possibility of early release *in 25 years* were to seek early release *today*, he would be ineligible for parole under Arizona law. *Ante,* at 3–4. Nonsense. The Due Process Clause does not compel such "micromanage[ment of] state sentencing proceedings." *Shafer*, *supra,* at 58 (THOMAS, J., dissenting).

Today's decision—issued without full briefing and argument and based on *Simmons,* a fractured decision of this Court that did not produce a majority opinion—is a remarkably aggressive use of our power to review the States' highest courts. The trial court accurately told the jury that Lynch could receive a life sentence with or without the possibility of early release, and that should suffice.

I respectfully dissent.