Alcala, J., filed a dissenting opinion.
This dissenting opinion addresses the trial court's error in failing to define the word "society" in a manner that would limit the jury's determination on the probability of the future dangerousness of George Thomas Curry, appellant, to the remainder of his natural life in prison. Here, the trial court allowed the jury to base its determination on a fictional inquiry into his future dangerousness in the free society into which he would never re-enter as a matter of law. This Court's majority opinion upholds appellant's death sentence by determining that the trial court did not err in defining "society" in a manner that would permit the jury to consider appellant's probability of future dangerousness in both the free world and/or prison society. I disagree with that holding. Although I agree with this Court's judgment to the extent that it affirms appellant's conviction for capital murder, I disagree with its affirmance of his death sentence.[1] I would sustain appellant's two *752 supplemental points of error that assert that the trial court harmfully violated his federal constitutional rights by instructing the jury that the word "society" in the future-dangerousness special issue had no special definition and that there was no limitation that the court would impose on the jury's application of that term. The trial court's answer to the jury's question effectively permitted the jury to consider the probability of appellant's future dangerousness in the free-world society and thereby incorrectly led it to believe that appellant might be released from prison prior to the end of his natural life if he was not sentenced to death.[2] I conclude that, although the word "society" in the future-dangerousness special issue is not statutorily defined and thus ordinarily should not be defined, the word must be limited to its technical meaning in this particular context in order for the Texas capital-murder statute to comply with federal constitutional requirements. Under these circumstances in which the law prescribes life without parole as the only alternative to a death sentence, the federal Constitution requires that a jury be informed of that reality, and it follows that a defendant has a Due Process right for the jury to be informed that its determination of whether he is a future danger is limited to prison "society" because, in reality, that is the only society where he will reside. Because the trial court failed to provide a definition of "society" that would have accurately conveyed to the jury that this term could, as a matter of law, refer only to prison society, I respectfully dissent to this Court's judgment affirming appellant's death sentence.
I. Background
Appellant was convicted of capital murder. In accordance with Texas law, the trial court instructed the jury to determine whether appellant posed a future danger to "society," but its instructions gave no definition of "society." See TEX. CODE CRIM. PROC. art. 37.071, § 2(b)(1).[3] Other portions of the original instructions that were given to the jury before it began its deliberations informed it that a sentence of life imprisonment meant a life sentence without the possibility of parole.
After slightly more than two hours of jury deliberations, the jury sent a note asking the trial court, "Does the term 'society' include, exclusively the prison system in this case?" The trial judge answered the note by stating, "There is no special definition in the law regarding the term 'society.' With that understanding, the jury cannot put a legal limitation on the term." The trial court judge explained that this supplemental instruction in response *753 to the jury's question was intended to give the jury free reign in that, "[i]f they want to believe it one way or believe it the other way, they can." Trial counsel for appellant objected to the trial court's answer to the jury's question and requested that the court refer the jury to the initial charge explaining that life without parole is the only alternative to death for capital murder.
In this direct appeal, appellant contends that the trial court's supplemental jury instruction "allowed the apparent belief that the appellant might be released from his life sentence for some reason in deciding his future dangerousness contrary to Lynch v. Arizona ." See --- U.S. ----, 136 S.Ct. 1818, 195 L.Ed.2d 99 (2016). Appellant argues that he was harmed by this supplemental instruction because it erroneously implied that he might be released from prison into free society one day, and he further contends that this instruction, therefore, likely influenced the jury's punishment decision by leading it to erroneously consider whether he would be a future danger in free society. See TEX. R. APP. P. 44.2(a).
Appellant's supplemental brief acknowledges that the trial court's jury instructions initially properly informed the jury that the only alternative to a death sentence was a sentence of life without parole, but he argues that the trial court's supplemental jury instruction in the form of its answer to the jury's question circumvented those initial instructions. Appellant states, "The trial court's additional instruction encouraged the mistaken belief he might be released from his life sentence for some reason in assessing his future dangerousness." Appellant argues that, because the trial court's supplemental instruction permitted the jury to find that "society" includes free society even though appellant's only alternative to a death sentence was life without parole, this created an impermissible "false choice" of the same type that was held to be unconstitutional in Simmons v. South Carolina , 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). Appellant further argues that he was harmed by the erroneous supplemental jury instruction because the trial court refused to refer the jury back to the original charge that had informed it that appellant would be sentenced to either death or life without parole. In particular, appellant contends that the trial court's instructions diminished the evidentiary value of his nonviolent prison history and invited speculation on his future dangerousness if released from prison into free society. He suggests that, because the trial court did not refer back to the original jury instructions, the fact that those instructions informed the jury that life in prison meant life without parole did not remedy the problem in the supplemental instructions.
II. Analysis
The failure to define the word "society" in this case coupled with the trial court's answer to the jury's question by stating that the court would not place a legal limitation on the jury's definition of that term constitutes a violation of appellant's Fourteenth Amendment Due Process rights, and I would sustain his two supplemental grounds on that basis.[4] To understand why the failure to define the word "society" as limited to prison society rises to the level of a federal constitutional violation, *754 it is necessary to first review Supreme Court precedent in Simmons and Lynch . After that, I show that the trial court erred by refusing to define the word "society" in a manner that would limit the jury's consideration of the probability of future dangerousness to a determination of the remainder of appellant's natural life in prison and, further, that it erred by providing a supplemental instruction that misled the jury by implicitly suggesting that appellant might be released from prison one day, when in actuality Texas law prohibits that occurrence. In short, the totality of the trial court's instructions erroneously permitted the jury to decide that appellant was probably a future danger based on whether he would pose a risk to free society, which is a hypothetical situation that would never occur under Texas law. Because it is likely that the jury's decision that appellant was probably a future danger included consideration of his dangerousness to the free world and because that inquiry is a fictional circumstance that would never occur under Texas law, a death sentence under this situation violates appellant's federal constitutional due process rights.
A. Supreme Court Precedent in Simmons and Lynch
Under circumstances in which state law provides that the only alternative to a sentence of death is a sentence of life without parole, the federal Constitution requires that a jury be informed of that fact in deciding whether a capital defendant is a future danger to society. In Simmons , the Supreme Court answered the question of whether the Due Process Clause of the Fourteenth Amendment was violated by the refusal of a state trial court to instruct the jury in the penalty phase of a capital-murder trial that, under state law, the defendant was ineligible for parole. Simmons , 512 U.S. at 156, 114 S.Ct. 2187. The Court held that, "where the defendant's future dangerousness is at issue, and state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible." Id. In that case, the State had emphasized Simmons's potential future dangerousness to society at large in seeking the death penalty. Id. at 159, 114 S.Ct. 2187. After deliberating on Simmons's sentence for ninety minutes, the jury sent a note to the judge asking a single question: "Does the imposition of a life sentence carry with it the possibility of parole?" Id. at 160, 114 S.Ct. 2187. The judge instructed the jury "not to consider parole or parole eligibility in reaching your verdict," and he further instructed the jury that "the terms life imprisonment and death sentence are to be understood in their plan [sic] and ordinary meaning." Id. The Supreme Court noted in Simmons that the jury reasonably may have believed that Simmons could be released on parole if he were not sentenced to death. Id. at 161, 114 S.Ct. 2187. The Court explained that, to "the extent this misunderstanding pervaded the jury's deliberations, it had the effect of creating a false choice between sentencing petitioner to death and sentencing him to a limited period of incarceration." Id. The Court observed that this "grievous misperception was encouraged by the trial court's refusal to provide the jury with accurate information regarding petitioner's parole ineligibility, and by the State's repeated suggestion that petitioner would pose a future danger to society if he were not executed." Id. at 162, 114 S.Ct. 2187. In finding that it was "clear" that Simmons had been denied his right to due process, the Court explained that the State "succeeded in securing a death sentence on the ground, at least in part, of [Simmons's] future dangerousness, while at the same time concealing from the sentencing jury the true meaning of its noncapital sentencing *755 alternative, namely, that life imprisonment meant life without parole." Id.
The Supreme Court's rationale in Simmons for requiring the jury to be informed that the law permits only two sentencing options, a life-without-parole sentence or a death sentence, was that a jury would be more likely to decide that a defendant is a future danger if it was considering his conduct in free society as compared to prison society. Id. at 163, 114 S.Ct. 2187. The Court said, "In assessing future dangerousness, the actual duration of the defendant's prison sentence is indisputably relevant." Id. Furthermore, the Court stated, "Holding all other factors constant, it is entirely reasonable for a sentencing jury to view a defendant who is eligible for parole as a greater threat to society than a defendant who is not." Id. The Court explained the critical importance of informing the jury about a defendant's possibility of a lifelong prison sentence without the possibility of parole, as follows:
Indeed, there may be no greater assurance of a defendant's future nondangerousness to the public than the fact that he never will be released on parole. The trial court's refusal to apprise the jury of information so crucial to its sentencing determination, particularly when the prosecution alluded to the defendant's future dangerousness in its argument to the jury, cannot be reconciled with our well-established precedents interpreting the Due Process Clause.
Id. at 163-64, 114 S.Ct. 2187.
In addressing almost the identical question as in the instant case before this Court, the Supreme Court in Simmons considered the consequences of failing to instruct the jury that "society" would be limited to prison society if a defendant was sentenced to life without parole. The Supreme Court observed that, in the absence of definitive information about whether Simmons could ever be paroled, the "jury was left to speculate about [Simmons's] parole eligibility when evaluating [his] future dangerousness, and was denied a straight answer about [his] parole eligibility even when it was requested." Id. at 165-66, 114 S.Ct. 2187. In a footnote that appears to precisely address the instant question before this Court, the Supreme Court said,
Of course, the fact that a defendant is parole ineligible does not prevent the State from arguing that the defendant poses a future danger. The State is free to argue that the defendant will pose a danger to others in prison and that executing him is the only means of eliminating the threat to the safety of other inmates or prison staff. But the State may not mislead the jury by concealing accurate information about the defendant's parole eligibility. The Due Process Clause will not tolerate placing a capital defendant in a straightjacket by barring him from rebutting the prosecution's arguments of future dangerousness with the fact that he is ineligible for parole under state law.
Id. at 165 n. 5, 114 S.Ct. 2187. The Supreme Court concluded in Simmons that, "[b]ecause [Simmons's] future dangerousness was at issue, he was entitled to inform the jury of his parole ineligibility." Id. at 171, 114 S.Ct. 2187. Accordingly, the "State may not create a false dilemma by advancing generalized arguments regarding a defendant's future dangerousness while, at the same time, preventing the jury from learning that the defendant will never be released on parole." Id.
In Lynch , the Supreme Court recently reaffirmed its holding in Simmons that "due process entitled the defendant to rebut the prosecution's argument that he posed a future danger by informing his sentencing jury that he is parole ineligible."
*756 Lynch , 136 S.Ct. at 1819. The Lynch Court observed that the possibility of executive clemency or of changed legislation that might permit parole in the future for capital murderers are not proper grounds for declining to instruct the jury that the only alternative to a death sentence in a capital case is life without parole. Id. at 1819-20. Thus, " 'where a capital defendant's future dangerousness is at issue, and the only sentencing alternative to death available to the jury is life imprisonment without possibility of parole,' the Due Process Clause 'entitles the defendant to inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel.' " Id. at 1818 (quoting Shafer v. South Carolina , 532 U.S. 36, 39, 121 S.Ct. 1263, 149 L.Ed.2d 178 (2001) ).
Taking the teachings of Simmons and Lynch together, those cases reflect the Supreme Court's assessment that a defendant has a federal constitutional right to jury instructions that clearly inform the jury that the only alternative to a death sentence is a sentence of life without parole when a state has provided for only those two sentencing options in a capital murder case. Furthermore, these cases demonstrate that a jury's decision on the question of whether a defendant is probably a future danger to society must be based on the applicable law that provides for only two alternatives of death or life without parole, and not on some hypothetical false choice that is premised on the possibility of a defendant's release into free society when the applicable law prohibits him from ever re-entering free society again.
B. The Trial Court Erred by Declining to Define "Society" as Being Limited to Prison Society
The issue in this case is whether, under the circumstances of this case, it violated the Fourteenth Amendment to the United States Constitution for the trial court to refuse to define "society" as being limited to prison society in light of Texas's capital-punishment statute that mandates a sentence of life without parole as the only alternative to a death sentence for those convicted of capital murder. I conclude that it did because the trial court's instruction likely (1) led the jury to believe that appellant might be released from prison before the conclusion of his natural life, (2) affected the jury's answer that appellant was probably a future danger, and (3) gave the jury a false choice between a life-with-parole sentence versus a death sentence, when the truthful choice is between a life-without-parole sentence versus a death sentence.
The instant situation is similar to the one that the Supreme Court condemned as constitutionally impermissible in Simmons , in which the trial court had declined to expressly tell the jury that Simmons's only alternative to a sentence of death was a sentence of life without parole. In Simmons , the Supreme Court determined that the trial court's instruction to the jury informing it that parole was not a proper issue for its consideration "suggested that parole was available but that the jury, for some unstated reason, should be blind to this fact." Simmons , 512 U.S. at 170, 114 S.Ct. 2187. Similarly, here, although the trial court's initial jury instructions made clear that appellant's only alternative to a death sentence was life without parole, the trial court effectively undermined that instruction when it supplemented the instructions with the information that there was "no special definition in the law regarding the term 'society' " and that the jury could not put a "legal limitation on the term." Under the rationale in Simmons and Lynch , that instruction was erroneous because it suggested to the jury, in contravention of the trial court's written *757 instructions, that society could perhaps include free society even though the law in Texas is that a capital-murder defendant who is not sentenced to death will be sentenced to life without parole. As in Simmons , the trial court's vague response to the jury's question suggested that, in spite of Texas law that prohibits the release of a capital murderer to parole, parole may in fact be available but, for some unstated reason, the jury was not permitted to be aware of that possibility. To comply with the Supreme Court's holding in Simmons , the trial court should have instructed the jury, as follows:
You have been previously instructed that the only alternative to a death sentence in this case is a sentence of life without parole. You must consider the word "society" in the context of a sentence of life without parole.
The trial court, therefore, erred by answering the question in a manner that suggested to the jury that it could consider the probability of appellant's future dangerousness in the free world, as if he might be paroled into the free world at some future point in time, when Texas law prohibits that occurrence.
Another problem with the trial court's instruction to the jury in failing to limit "society" to prison society is that it is more likely that the jury would answer the question in the affirmative with respect to whether appellant was a future danger if it was permitted to include the free-world society in its consideration along with prison society. The question of whether a jury must be informed that "society" is limited to appellant's natural life in prison implicates the same concerns as those in Simmons, in which the Supreme Court said that "it is entirely reasonable for a sentencing jury to view a defendant who is eligible for parole as a greater threat to society than a defendant who is not." Id. at 163, 114 S.Ct. 2187. This is particularly true in the context of a jury's answer to a special issue about a defendant's future dangerousness to society. Given that the freedoms of movement and association by a defendant who is sentenced to life without parole will certainly be significantly more restricted than his movements and associations in the free world, the jury's answer to a special issue about future dangerousness to society may differ greatly depending on whether it considers his future dangerousness to the free world or only his future dangerousness in prison society. The Supreme Court was well aware of that critical distinction in its observation that "there may be no greater assurance of a defendant's future nondangerousness to the public than the fact that he never will be released on parole." Id. at 163-64, 114 S.Ct. 2187.
The trial court's instruction was also erroneous because it presented the jury with a false choice. Rather than properly limit the jury's consideration only to the reality of a sentence of life without parole as required by Simmons and Lynch , the trial court permitted the jury to consider a hypothetical but counterfactual scenario in which appellant's future dangerousness could impact the free-world society in which he would never live again under the applicable laws of the State of Texas. That is precisely the problematic scenario that the Supreme Court addressed in Simmons when it explained that the lack of a definitive instruction to the jury created a "misunderstanding" that "pervaded the jury's deliberations" and "had the effect of creating a false choice between sentencing petitioner to death and sentencing him to a limited period of incarceration." Id. at 161, 114 S.Ct. 2187. The concerns at issue in the instant case rise to the level of implicating the Due Process Clause for the same reasons the Supreme Court articulated in Simmons , in which the concern was *758 that the jury was making a sentencing decision based on a false dilemma when the jury was not fairly apprised of the pertinent reality of the defendant's incarceration for the remainder of his natural life.
Because the trial court declined to limit the jury's determination of future dangerousness to appellant's probable risk to prison society, the result was that the jury instructions violated appellant's due-process rights. The instructions likely misled the jury into believing that appellant might be paroled, when the law disallows appellant from consideration for parole; swayed the jury to find that appellant would probably be a future danger to free-world society, when the law prohibits his release on parole into the free world; and gave the jury a false choice by suggesting that the decision was a life-with-parole sentence versus a death sentence, when the law is instead based on a decision between a life-without-parole sentence versus a death sentence. When state law has provided for only two sentencing alternatives for capital murder-life without parole or death-a jury's sentencing decision against life without parole, and in favor of death, must be based on the reality that a defendant sentenced to life will never be released into free society, rather than on a hypothetical scenario that would permit his release which, as a matter of law, would never occur.
C. The Trial Court's Definition of "Society" Harmed Appellant
Juries are presumed to follow the instructions given to them by the court, but, under these circumstances that clearly reflect a lack of understanding by the jury as to the proper meaning of society, this Court must presume that the jury considered society as including both free society and prison society. See Greer v. Miller , 483 U.S. 756, 766 n.8, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) ; Williams v. State, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996). Because the jury was not informed that society included only prison society and the trial court's vague supplemental instruction suggested to the jury that it could not place any "legal limitation" on the meaning of the term, it is probable that the jury would have disregarded the trial court's earlier instruction that a life sentence in this case meant life without parole.
I am unpersuaded that the jury instructions in the original set given to the jury before it began its deliberations that informed it that appellant's only alternative to a death sentence was a sentence of life without parole is an adequate basis to find the error harmless in this case. Although it is true that the original jury instructions told the jury that life in prison meant life without parole, the fact that the trial court did not refer back to those instructions when it answered the jury's questions likely left the jury with the impression that it could measure appellant's future dangerousness based on the hypothetical scenario in which appellant would be in the free world. Appellant's counsel requested that the court refer the jury back to the original instructions, but the court refused to do that and thereby increased the risk that the jury was misled by the court's supplemental instruction.
The future dangerousness special issue is a means by which the death penalty may be reserved for only those capital murderers who are probably a future danger in prison society. By failing to limit the jury to that sole consideration, the trial court likely affected the jury's determination of this issue in favor of a death sentence. It appears likely that the jury discounted appellant's non-violent prison record in deciding his future dangerousness because, in failing to limit the jury's consideration *759 to prison society, the trial court permitted it to consider his behavior in the free world in answering the special issue.
For all of these reasons, I conclude that the trial court's refusal to explain "society" as only prison society was not harmless error. See TEX. R. APP. P. 44.2(a). In light of these considerations, I would hold that the trial court's instructions to the jury in this case harmfully violated appellant's constitutional rights.
III. Conclusion
I conclude that the trial court violated appellant's federal constitutional right to due process by failing to limit the meaning of the word "society" in the punishment-phase special issue that asked the jury to determine whether appellant was probably a future danger to society. Specifically, by providing the jury with a misleading supplemental instruction that appeared to permit the jury to consider appellant's future dangerousness if he were released into free society, rather than limiting the inquiry to his future dangerousness in prison society, the trial court appeared to suggest that appellant might at some future point in time be released into free society, and it thus allowed the jury to consider that possibility in assessing his future dangerousness. In light of the violation of appellant's constitutional rights in the sentencing phase of his capital-murder trial, I would reverse that portion of the trial court's judgment that imposes a sentence of death against appellant, and I would remand this case to the trial court for further proceedings. I, therefore, respectfully dissent.

With the exception of appellant's first issue, I agree with this Court's majority opinion's analysis pertaining to the guilt phase of trial. Appellant's first issue challenges the trial court's ruling admitting eyewitness-identification evidence on the basis that the identification procedures were impermissibly suggestive. This Court's majority opinion holds that the admission of this evidence was not erroneous and its opinion, therefore, does not address the issue of harm. Although I agree with appellant that some of the identification procedures may have been questionable, I would overrule his complaint because he cannot show that he was harmed in this case, given that his left palm print was placed at the scene at the time of the offense.

Specifically, as I discuss below, I agree that appellant's Fourteenth Amendment Due Process rights were violated based on the Supreme Court's reasoning in Simmons v. South Carolina , 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), and Lynch v. Arizona , --- U.S. ----, 136 S.Ct. 1818, 195 L.Ed.2d 99 (2016). Appellant bases his arguments in his brief on the protections of the Eighth and Fourteenth Amendments, but, because the Supreme Court expressly declined to address whether the Eighth Amendment compels the same conclusion, my analysis rests solely on the Fourteenth Amendment's Due Process Clause. See Simmons , 512 U.S. at 162 n. 4, 114 S.Ct. 2187.

"On conclusion of the presentation of the evidence, the court shall submit the following issues to the jury: (1) Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society[.]" Tex. Code Crim. Proc. art. 37.071, § 2(b)(1).

I do not directly discuss appellant's fifth through ninth issues, although I agree with this Court's majority opinion's characterization that his arguments in his supplemental brief essentially track the arguments he made in those issues but with additional authority. For simplicity, I refer directly to appellant's supplemental grounds, but I would also sustain his complaints on these additional issues.