NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

LUIS WILLIAM WINIKER, *Appellant.*

No. 1 CA-CR 17-0447
No. 1 CA-CR 17-0457
(Consolidated)
FILED 7-10-2018

---

Appeal from the Superior Court in Maricopa County
No. CR2012-149219-002
No. CR2017-000951-001
The Honorable David O. Cunanan, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jason Lewis
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kevin D. Heade
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge James P. Beene delivered the decision of the Court, in which Judge Michael J. Brown and Judge Jennifer M. Perkins joined.

---

**B E E N E**, Judge:

¶1        Luis William Winiker ("Winiker") appeals his convictions and sentences for attempted second-degree murder and aggravated assault. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY[1]**

¶2        On July 23, 2016, Winiker completed his evening shift at work and then spent several hours drinking and socializing with friends. At approximately three o'clock the following morning, Winiker requested an Uber-ride home, realizing he was too intoxicated to safely drive. Shortly after being picked up, however, Winiker was ejected from the Uber-vehicle because he had an open container of alcohol. Unfamiliar with the location where he was dropped off, Winiker could not provide an address for pickup from another service, so he decided to hitchhike home.

¶3        Before long, the victim drove up in a silver car, stopped, and offered Winiker a ride. Winiker accepted and sat in the car's front-passenger seat. Although Winiker and the victim neither flirted nor discussed engaging in sexual activity, at some point, the victim touched and rubbed Winiker's penis, both over and under his clothing. Feeling afraid and "trapped," Winiker initially did not move or speak. As minutes passed, however, he contemplated how to stop the victim and eventually grabbed the steering wheel, crashing the victim's vehicle into a freeway barrier.

¶4        After the crash, both men exited the car and Winiker punched and beat the victim to the ground. At that point, another motorist spotted the victim's disabled vehicle and stopped to assist. As the motorist walked toward Winiker, he noticed the victim lying unconscious on the roadway and asked whether Winiker had called 9-1-1. Angrily, Winiker responded that the victim was "a child molester" who had grabbed his genitals.

---

[1]        We view the facts in the light most favorable to sustaining the verdicts. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

¶5 Undeterred by the motorist's presence, Winiker then picked up a piece of broken debris, a headlamp, and twice struck the victim's face. Although these blows caused substantial injury and profuse bleeding, the victim never moved. The motorist implored Winiker to stop, stating the police would deal with the sexual assault, but Winiker halted for only a brief period, and subsequently resumed striking the victim.

¶6 Within five minutes of the motorist's stop, patrol officers arrived, immediately placing Winiker under arrest and then rendering aid to the victim, who remained nonresponsive. In the weeks that followed, the victim received substantial medical treatment, both in a hospital setting and then in a long-term care facility, but he never fully recovered from his injuries and sustained permanent disfigurement to his face and head.

¶7 The State charged Winiker with one count of attempted second degree murder (Count 1) and two counts of aggravated assault (Count 2 – used a deadly weapon or dangerous instrument; Count 3 – intentionally, knowingly, or recklessly caused serious physical injury). The State also alleged numerous aggravating circumstances and that Winiker both had prior felony convictions and was on release when he committed the current offenses.

¶8 At trial, Winiker acknowledged that he punched and kicked the victim after the crash and repeatedly struck the victim with a headlamp as he lied motionless on the road. Nonetheless, Winiker testified that he never realized the victim had lost consciousness and claimed he continued to feel threatened by the victim until police officers arrived.

¶9 After an eight-day trial, a jury found Winiker guilty as charged and aggravated circumstances as to each count. The superior court sentenced Winiker to concurrent, aggravated sentences on each count and imposed a one-year term of imprisonment on an unrelated probation violation matter. Winiker timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I. Preclusion of Evidence Regarding the Victim's Other Act

¶10 Winiker contends the superior court improperly precluded evidence of the victim's other act. He asserts the court's evidentiary ruling deprived him of his constitutional right to present a complete defense.

¶11 A few weeks before trial, Winiker noticed his intent to introduce evidence regarding the victim's other act, explaining he would use the evidence to prove the victim's "intent, knowledge, modus [operandi], or absence of mistake or accident." Attached to the notice, Winiker submitted: (1) a plea agreement the victim had entered in which he pled guilty to sexual abuse; (2) a police report detailing the victim's previous, nonconsensual sexual contact with a hitchhiker; and (3) the victim's statement, acknowledging that he had picked up and "groped" a hitchhiker, but characterizing his conduct as "simply an error in judgment."

¶12 In response, the State moved *in limine* to preclude any evidence regarding the victim's other act. The State argued the other act was not relevant because "even if the victim touched [Winiker] inappropriately . . ., [Winiker] consented to the touching as he allowed it to continue[.]" In addition, the State contended the evidence was irrelevant because the victim was unconscious when the charged offenses occurred, and therefore he presented no threat to Winiker that justified the use of force.

¶13 At a hearing on pretrial motions, the prosecutor clarified the State's position, explaining the State did not contest Winiker's allegation that the victim had touched his penis without consent. Rather, the State theorized that any threat the victim may have posed indisputably ceased once Winiker beat him unconscious. Therefore, the victim's conduct in the car, even if unlawful, did not justify Winiker's subsequent attack with the headlamp. In making this argument, the prosecutor assured the court that she would not introduce any evidence regarding Winiker's allegation of sexual abuse and would not present his police interview statements at trial. After hearing from counsel, the superior court granted the State's motion to preclude, finding the other-act evidence was not relevant, though noting the evidence could become relevant for impeachment purposes depending on the evidence presented at trial. As such, the court invited defense counsel to revisit the issue if testimony or other evidence introduced at trial rendered the victim's other act relevant.

¶14 Notwithstanding her representations at the pretrial hearing, the prosecutor played a recording of Winiker's police interrogation to the jury and elicited the interviewing detective's opinion that the sexual contact between the victim and Winiker was consensual. Indeed, the detective testified that no "reasonable person" could believe the victim knew "that his advances were unwanted" because Winiker failed to convey, either verbally or physically, a lack of consent until he grabbed the steering wheel and crashed the car.

**¶15** After the detective's direct examination, defense counsel petitioned the court to reconsider its earlier preclusion ruling, arguing the State had "opened the door to the victim's prior conduct." The court denied defense counsel's motion, finding any evidence regarding the victim's other act was both irrelevant and unduly prejudicial.

**¶16** We review a superior court's evidentiary ruling for an abuse of discretion. *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006). A court abuses its discretion when the reasons given for its decision are clearly untenable, legally incorrect, unsupported by the record, or otherwise amount to a denial of justice. *State v. Chapple*, 135 Ariz. 281, 297 n.18 (1983), *superseded on other grounds* by A.R.S. § 13-756; *State v. Cowles*, 207 Ariz. 8, 9, ¶ 3 (App. 2004).

**¶17** A defendant has a constitutional right to present a defense, but not the right to present "that theory in whatever manner and with whatever evidence [the defendant] chooses." *State v. Carlson*, 237 Ariz. 381, 393, ¶ 36 (2015) (internal quotation and citation omitted). Stated differently, a defendant's right to present evidence in support of his defense, though constitutionally protected, is nonetheless subject to the rules of evidence. *Id*.

**¶18** At trial, the parties did not dispute that Winiker repeatedly hit the victim in the face with a headlamp, causing life-threatening injuries and substantial and permanent disfigurement. Instead, the narrow issue before the jury was whether Winiker's actions were legally justified.

**¶19** Winiker presented two justification defenses: (1) self-defense (A.R.S. § 13-404), and (2) the use of force in crime prevention (A.R.S. § 13-411). As set forth in A.R.S. § 13-404(A) and relevant here, a person's use of physical force against another is justified only "to the extent a reasonable person would believe that physical force is immediately necessary to protect . . . against the other's use or attempted use of unlawful physical force." Similarly, under A.R.S. § 13-411(A), a person's use of physical force against another to prevent certain, enumerated crimes (including sexual assault) is legally justified only "if and to the extent the person reasonably believes that physical force . . . is immediately necessary to prevent the other's commission" of the crime.

**¶20** Contrary to its pretrial framing of the case, the State placed the victim's intent and knowledge directly at issue by eliciting testimony that under a reasonable person standard, the victim could not have known his "sexual advances" were unwelcome. To rebut this testimony and

corroborate his claim that the victim sexually assaulted him, Winiker sought to introduce evidence that the victim had previously sexually assaulted another hitchhiker and therefore knew that grabbing another person's genitals without warning was illegal.

**¶21**        Arizona Rules of Evidence ("Rule") 404 governs the admission of character and "other act" evidence.  Rule 404(b) prohibits evidence of other crimes, wrongs, or acts to prove a person's character to act in a certain way, but allows such evidence for non-propensity purposes, such as showing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Ariz. R. Evid. 404(b); *see also State v. Fish*, 222 Ariz. 109, 117, ¶ 21 (App. 2009) (explaining evidence of specific other acts by a victim is generally inadmissible unless permitted under Rule 404(b)).  Before admitting other-act evidence, a superior court must find: (1) there is clear and convincing evidence the defendant committed the other act; (2) the evidence is relevant under Rule 402; (3) the evidence is offered for a proper purpose under Rule 404(b); and (4) the probative value of the evidence is not substantially outweighed by the potential for unfair prejudice under Rule 403.  *State v. Terrazas*, 189 Ariz. 580, 584 (1997); *State v. Mott*, 187 Ariz. 536, 545 (1997).

**¶22**        The first three Rule 404(b) factors were satisfied in this case.  First, it is uncontroverted that the victim committed the other act, a sexual crime against another hitchhiker.  Second, the other-act evidence was proffered for a proper purpose, namely, to corroborate Winiker's account and prove the victim knew his conduct was unlawful.  *See Fish*, 222 Ariz. at 123, ¶ 45 (holding evidence regarding a victim's other acts may be admissible to show the victim's intent or to corroborate the defendant's version of events).  Third, the victim's other act became relevant once the State elicited testimony that his sexual contact with Winiker was consensual, directly challenging Winiker's sexual assault allegation and credibility.  *See id.* at 124 n.11, ¶ 48 (concluding the State's argument challenging the defendant's account of the victim's conduct "opened the door to introduction of prior act evidence to show [the victim's] state of mind and the exact alleged threat [the defendant] may have been facing").

**¶23**        Turning to the fourth factor, the State's challenge to Winiker's credibility rendered the other-act evidence probative.  Although we generally defer to a superior court's Rule 403 analysis, in this case, that balancing was inherently skewed because the court found the other-act evidence was not relevant and was therefore necessarily of minimal probative value.  *See id*. at 125, ¶¶ 51-52.  Contrary to the court's finding, however, the veracity of Winiker's sexual assault allegation was crucial to

his defense, and therefore the probative value of the corroborating other-act evidence was significant. *See State v. Castro*, 163 Ariz. 465, 473 (App. 1989) (under Rule 403, proffered evidence must be evaluated in the light most favorable to the proponent, "maximizing its probative value and minimizing its prejudicial effect.") (internal quotations and citation omitted).

¶24        Nonetheless, we need not decide whether the probative value outweighed the prejudicial effect because even assuming the superior court abused its discretion by excluding the other-act evidence, such error was necessarily harmless. *Fish*, 222 Ariz. at 114, ¶ 8 (explaining error is harmless if we can conclude, beyond a reasonable doubt, that the error did not contribute to or affect the jury's verdict). The State did not charge Winiker for crashing the victim's car into a barrier or beating the victim into a state of unconsciousness. Instead, the State charged Winiker only for striking the victim with a headlamp after he had rendered the victim immobile. Because it is uncontroverted that the victim lied unconscious on the road while Winiker repeatedly hit his face with a large metal object, inflicting life-threatening injuries and causing permanent physical disfigurement, the victim's alleged unlawful conduct in the vehicle provided no defense to the charges. That is, even accepting Winiker's account in its entirety, no reasonable person would have believed that use of physical force against the unconscious victim was "immediately necessary" to protect against the victim's use of unlawful force or to prevent the victim's commission of a crime. As a matter of law, an unconscious person presents no imminent threat or danger. Therefore, given the uncontroverted evidence that Winiker repeatedly struck the unconscious victim in the face with a headlamp, the superior court's exclusion of the other-act evidence, if error, was necessarily harmless.

## II.    Denial of *Batson*[2] Challenge

¶25        Winiker challenges the State's peremptory strike of five racial-minority jurors from the venire panel, arguing the superior court erred by denying his *Batson* challenge.

¶26        "[U]sing a peremptory strike to exclude a potential juror solely on the basis of race violates the Equal Protection Clause of the Fourteenth Amendment." *State v. Newell*, 212 Ariz. 389, 400, ¶ 51 (2006) (citing *Batson v. Kentucky*, 476 U.S. 79, 89 (1986)). We will uphold the denial of a *Batson* challenge absent clear error. *Newell*, 212 Ariz. at 400, ¶ 52.

---

2        *Batson v. Kentucky*, 476 U.S. 79 (1986).

Because the superior court is in the best position to assess a prosecutor's credibility, which is a primary factor in evaluating the State's motive for exercising a peremptory strike, we extend "great deference" to the court's ruling. *State v. Roque*, 213 Ariz. 193, 203, ¶ 12 (2006) (internal quotation and citation omitted), *abrogated on other grounds by State v. Escalante-Orozco*, 241 Ariz. 254 (2017); *Newell*, 212 Ariz. at 401, ¶ 54.

¶27        A *Batson* challenge is comprised of three steps. *Newell*, 212 Ariz. at 401, ¶ 53. First, the defendant must make a *prima facie* showing of racial discrimination. *Id*. If such a showing is made, the prosecutor must then present a race-neutral reason for the strike. *Id*. Finally, if the prosecutor provides a facially neutral basis, the superior court must determine whether the defendant has nonetheless "established purposeful discrimination." *Id*. (internal quotation and citation omitted). "To pass step two, the explanation need not be persuasive, or even plausible[,]" but "implausible or fantastic justifications may (and probably will) be found to be pretext" when the court determines whether the defendant has proven purposeful discrimination. *Id*. at ¶ 54 (internal quotations and citation omitted).

¶28        During jury selection in this case, Winiker challenged the State's peremptory strike of Juror Nos. 1, 5, 26, 35, and 37, each a member of a racial minority. Without expressly finding that Winiker had made a sufficient *prima facie* showing of racial discrimination, the court asked the prosecutor to state her basis for each strike. By asking this question, the court implicitly found that Winiker had met his initial burden, satisfying the first step of the *Batson* analysis. *See State v. Bustamante*, 229 Ariz. 256, 261, ¶ 16 (App. 2012).

¶29        For Juror No. 1, the prosecutor cited a recent arrest, work conflicts, and inappropriate attire. In response, defense counsel noted that "a number of people" were similarly dressed in casual clothing, including venire members the State did not strike. Although the court did not accept casual attire "as a race neutral reason," it found the juror's recent arrest and "contact with the criminal justice system" qualified as permissible, race-neutral bases to exercise the peremptory strike.

¶30        Next, the prosecutor noted that Juror No. 5, like Juror No. 1, had been arrested and expressed concern that his employer would not compensate him for his jury service. As with Juror No. 1, the court found Juror No. 5's previous arrest and work conflicts constituted legitimate, race-neutral bases for the strike.

¶31     Turning to Juror No. 26, the prosecutor stated the juror's hardship prompted the peremptory strike. The court found the State had met its burden of providing a race-natural reason and also noted that other Hispanic jurors remained on the panel, such that the prosecutor's peremptory strikes did not "exclud[e] all members of a particular community."

¶32     For Juror No. 35, the prosecutor explained she struck the juror based on his employment as a high school baseball coach and teacher, believing he would "be more sympathetic to a young male defendant." In response, defense counsel noted the State had not struck another juror that coached high school football. The court found the State had met its burden of providing a race-neutral reason, again noting that other Hispanic jurors remained on the panel.

¶33     Finally, as to Juror No. 37, the prosecutor cited the juror's employment as a school translator and her son's arrest, explaining these factors increased the likelihood that she would sympathize with a young man. The court found the reasons race neutral and once more noted that the empaneled jury included Hispanic jurors.

¶34     Winiker raises three discrete challenges to the State's exercise of peremptory strikes. First, he argues the superior court erred by permitting the prosecutor to strike Juror No. 1 "despite [the court's] finding that the prosecutor had provided [a] discriminatory basis for striking the potential juror." Indeed, asserting the court "should have ended the inquiry" once it found "the prosecutor acted with racial animosity," Winiker contends the court improperly "permitted the prosecutor to obscure her racial animus" by providing "additional non-discriminatory bases."

¶35     This argument misstates the record. When asked to provide her basis for striking Juror No. 1, the prosecutor outlined three reasons: first, the juror's recent arrest; second, the juror's work-related concerns; and third, the juror's casual attire. Although the court determined the last basis (inappropriate dress) failed to withstand scrutiny ("I don't know if I would count his attire as a race neutral reason."), it found the first two bases were race-neutral, and therefore the State had met its burden of presenting a race-neutral reason for its exercise of the peremptory strike. Thus, contrary to Winiker's claims, the court neither found that the prosecutor acted with racial animus nor permitted the prosecutor to provide "additional" bases after finding a discriminatory basis. On this record, there is no basis to

conclude that the prosecutor's proffered reasons for the strike were pretext for racial discrimination.

¶36        Second, Winiker argues the superior court failed to determine whether he had established purposeful discrimination, the last step of the *Batson* analysis.   The record reflects, however, that in evaluating the prosecutor's proffered reasons, the superior court noted that two minority jurors remained on the panel and implicitly concluded that Winiker had failed to establish purposeful discrimination.  *See State v. Hardy*, 230 Ariz. 281, 285, ¶ 12 (2012) ("Although not dispositive, the fact that the state accepted other minority jurors on the venire is indicative of a nondiscriminatory motive.") (internal citation omitted).   At that point, defense counsel offered nothing further to support her challenge, other than noting that five of the State's six peremptory strikes were used against "minorities."

## A.    Statistical Analysis

¶37        Winiker argues a statistical analysis of the stricken jurors demonstrates a discriminatory basis because 83% of the State's peremptory strikes removed racial-minority jurors.  Although 83% is a high percentage, statistical disparity satisfies only step one of the *Batson* test.  *See Sorto v. Herbert*, 497 F.3d 163, 170 (2d Cir. 2007) ("[S]tatistical disparities are to be examined as part of the *Batson* prima facie inquiry.") (internal quotations and citation omitted).  In this case, the first step of the *Batson* inquiry was satisfied when the superior court asked the prosecutor to explain the basis for her peremptory strikes.  In other words, by requiring the prosecutor to articulate the bases for her strikes, the court determined that Winiker had made a *prima facie* showing that the peremptory strikes were racially discriminatory.  *See State v. Gay*, 214 Ariz. 214, 221, ¶ 20 (App. 2007) ("[S]tatistical disparity alone does not suggest the trial court erred.").

## B.    Comparative Analysis

¶38        Winiker also contends a comparative analysis of the similarities between stricken and retained jurors (Juror Nos. 20, 31, and 32) demonstrates racial bias.  When asked to explain the basis for his challenge in the superior court, however, Winiker noted only that one empaneled juror ("Juror No. 31") worked with young men as a high school football coach.  Although this juror works with young men similar to stricken Juror Nos. 35 and 37, the record reflects that Juror No. 31 self-identifies as Hispanic, and therefore this comparative analysis does not support a finding of purposeful discrimination.  Because Winiker did not present to

the superior court the other, more "detailed comparisons" he sets forth on appeal, we do not consider them. *Escalante-Orozco*, 241 Ariz. at 272, ¶ 37 (explaining the appellate court would "not examine more detailed comparisons" of "the jurors who were stricken and those who remained on the panel" than were "presented to the trial court") (citation omitted).

**¶39** Finally, without citing any authority, Winiker argues the prosecutor's failure to ask more detailed and probing *voir dire* questions demonstrates that she acted with purposeful discrimination when she exercised her peremptory strikes. Because Winiker provides no support for this argument, we do not consider it. *See State v. Moody*, 208 Ariz. 424, 452 n.9, ¶ 101 (2004) ("Merely mentioning an argument is not enough[.]").

**¶40** Thus, on this record, Winiker has failed to present any evidence that the peremptory strikes were the result of purposeful racial discrimination, and there is no basis to conclude the prosecutor's race-neutral reasons for the strikes were pretext. For these reasons, the superior court did not clearly err by concluding the State's strikes did not violate *Batson*.

## III.     Preclusion of Statements to Police Officers

**¶41** Winiker contends the superior court improperly precluded certain statements he made to police officers. Because these statements conveyed his physical discomfort, he argues they were admissible as present-sense impressions under Rule 803(1).

**¶42** Before trial, the State moved to preclude all statements Winiker made to law enforcement officers, arguing the statements were inadmissible hearsay. In response, Winiker asserted that each of his statements was admissible under Rule 803(3) as evincing his then-existing mental, emotional, or physical condition. In addition, he contended his statements "that he was hot and needed water" were admissible under Rule 803(1) as present-sense impressions.

**¶43** At a hearing on the motions, defense counsel argued Winiker's statements that he was hot and thirsty were relevant to show that police officers immediately "disregarded his claims" and "treated [him] like a suspect." The State countered that Winiker's complaints were not "relevant to anything." After hearing from the parties, the court granted the State's motion *in limine*.

¶44        We review a superior court's evidentiary ruling for an abuse of discretion, *Ellison*, 213 Ariz. at 129, ¶ 42, and uphold the court's decision if it is legally correct for any reason, *State v. Perez*, 141 Ariz. 459, 464 (1984).

¶45        In general, relevant evidence is admissible unless it is otherwise precluded by the federal or state constitution, an applicable statute, or a rule. Ariz. R. Evid. 402. Evidence is relevant if it has "any tendency" to make a fact of consequence in determining the action "more or less probable than it would be without the evidence[.]" Ariz. R. Evid. 401.

¶46        In this case, the only question before the jury was whether Winiker was legally justified in repeatedly striking the victim with a headlamp. Given this framing, Winiker's physical condition of being hot and thirsty after his arrest did not have any tendency to make a fact of consequence in determining the action more or less probable. The State did not contest that Winiker was extremely excited and sweating profusely when police officers arrived at the scene, and more importantly, these circumstances had no bearing on whether Winiker's actions were lawful. Likewise, to the extent Winiker contends the officers' failure to respond to his complaints shows that they treated him as a suspect, the officers' assessment of Winiker's culpability did not have any tendency to make a fact of consequence in determining the action more or less probable. The State did not contest that officers immediately handcuffed and arrested Winiker, and the officers' collective belief that Winiker had assaulted the victim had no bearing on whether his conduct was justified. For these reasons, the superior court did not abuse its discretion by precluding Winiker's statements complaining of heat and thirst.

## IV.    Alleged Misstatement of the Law

¶47        Winiker argues the superior court erred by failing to *sua sponte* instruct the jury that contrary to the State's representations, the victim was not entitled to a presumption of innocence.

¶48        In its final instructions, the superior court told the jurors that: (1) Winiker was entitled to a presumption of innocence; (2) the State bore the burden of proving Winiker guilty beyond a reasonable doubt; (3) Winiker was justified in using physical force to defend himself if a reasonable person would have believed physical force was immediately necessary to protect against the victim's use or apparent use of unlawful physical force, and Winiker used no more physical force than would have appeared necessary to a reasonable person; (4) the State bore the burden of

proving beyond a reasonable doubt that Winiker did not act with such justification; (5) Winiker was justified in using physical force against the victim if and to the extent he reasonably believed that physical force was immediately necessary to prevent the victim from committing sexual assault or kidnapping; (6) Winiker was presumed to have acted reasonably if he reasonably believed he was acting to prevent the imminent commission of sexual assault or kidnapping; (7) the State bore the burden of proving beyond a reasonable doubt that Winiker did not act with such justification; and (8) the lawyers' arguments were not evidence.

¶49　　　　During closing argument, defense counsel reminded the jurors that unlike other countries, the United States affords defendants certain constitutional protections, such as the presumption of innocence, which prevent the State from acting as "judge, jury, and executioner." Continuing with this theme, defense counsel later argued that the lead detective disregarded Winiker's sexual assault allegations because he "wanted to be the judge, the jury, and the executioner" in this case. On rebuttal, the prosecutor stated, over objection, that the victim, like Winiker, was entitled to a presumption of innocence. Acknowledging Winiker's claims of sexual assault, the prosecutor argued that the victim "deserved to be arrested . . . not taken to a hospital[.]" She also responded to defense counsel's claim that the lead detective "didn't care about the sexual assault" and only wanted to exact punishment on Winiker, countering, "It was [Winiker] who decided to act as the judge, the jury, and [the victim's] executioner."

¶50　　　　Although a prosecutor is permitted to argue her version of the evidence to the jury, she may not misstate the law. *State v. Serna*, 163 Ariz. 260, 266 (1990). Nonetheless, the superior court retains broad discretion "in controlling closing argument," and we affirm the court's rulings absent an abuse of discretion. *State v. Lynch*, 238 Ariz. 84, 97, ¶ 33 (2015), *overturned on other grounds by Lynch v. Arizona*, 136 S. Ct. 1818 (2016).

¶51　　　　Viewed in the context of counsels' full closing argument, the prosecutor's challenged statements were not a misstatement of the law, but an attempt to address and refute defense counsel's attacks on the adequacy of the police investigation. Importantly, in making these limited remarks, the prosecutor did not directly refer to either of Winiker's justification defenses or otherwise attempt to modify the court's final instructions to the jury. *See State v. Hernandez*, 170 Ariz. 301, 307-08 (App. 1991) ("[P]rosecutorial comments which are fair rebuttal to areas opened by the defense are acceptable.").

¶52        Nonetheless, to the extent the prosecutor's remarks arguably conveyed that a victim of sexual assault may only avail himself of legal remedies after the fact and may not use physical force to thwart a continuing threat because his attacker is presumed innocent, such argument misstates the governing law.  The record clearly reflects, however, that the superior court correctly instructed the jurors that: (1) a victim of sexual assault may use physical force to defend against further attack if reasonable under the circumstances, (2) the State bears the burden of proving such conduct is not justified, and (3) attorneys' arguments are not evidence.  Because we presume that jurors follow their instructions, *State v. Prince*, 204 Ariz. 156, 158, ¶ 9 (2003), and the undisputed evidence reflects that the victim was unconscious at the time Winiker used physical force against him, any misstatement of the law did not contribute to or affect the verdict in this case, and was therefore harmless.  *See State v. Anderson*, 210 Ariz. 327, 342, ¶ 52 (2005) (superior court's correct instruction on law and admonition that lawyers' arguments were not evidence negated error based on prosecutor's clear misstatements of law); *see also Fish*, 222 Ariz. at 114, ¶ 8.

## V.    Alleged Double Jeopardy Violation

¶53        Winiker argues his two convictions for aggravated assault arose out of a single, continuous act and therefore violate the constitutional proscription against double jeopardy.  Although he did not raise this issue in the superior court, a violation of double jeopardy constitutes fundamental, prejudicial error.  *State v. Price*, 218 Ariz. 311, 313, ¶ 4 (App. 2008).

¶54        As set forth in the indictment, the State alleged Winiker used a deadly weapon or dangerous instrument to intentionally, knowingly, or recklessly cause the victim physical injury (Count 2).  The State also alleged Winiker intentionally, knowingly, or recklessly caused the victim serious physical injury (Count 3).

¶55        An indictment that charges a single offense in multiple counts is multiplicitous, and the corresponding convictions can violate double jeopardy protections even when the court imposes concurrent sentences. *State v. Brown*, 217 Ariz. 617, 621, ¶ 13 (App. 2008).  This is because the "separate conviction, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored." *Ball v. United States*, 470 U.S. 856, 864-65 (1985) (emphasis omitted).

**¶56**      Although Winiker contends his multiple blows to the victim occurred as part of a single, continuous act, this claim is not substantiated by the record.  To the contrary, the motorist who stopped to assist Winiker and the victim testified that Winiker "slammed" the victim's face with a headlamp twice before the motorist could "g[e]t to him."  After these first two blows, however, the motorist "jumped" to action and confronted Winiker, demanding that he stop hitting the victim and allow the police to address the victim's alleged sexual assault.  At that point, Winiker repeated that the victim was a "child molester" and then walked to the victim's car, searched its interior, and attempted to access the vehicle's trunk.  Unable to open the trunk or persuade the motorist to assist him, Winiker approached the victim, and with a "smirk on his face," removed the victim's wallet from his pants' pocket and began "looking through" it.  After he examined the wallet and then unsuccessfully attempted to flag down additional motorists, Winiker returned to the victim, picked up the headlamp again, and struck the victim's face three more times.  Given these facts, Winiker's five blows to the victim's face cannot reasonably be characterized as arising out of the same, uninterrupted conduct, and discrete evidence supports each count. *See State v. Scott*, 243 Ariz. 183, 186-87, ¶ 12 (App. 2017) (holding the defendant's convictions for two counts of kidnapping were not multiplicitous because the victim briefly escaped from his physical control, and therefore the defendant's subsequent physical restraint of the victim constituted a separate act of kidnapping).  Therefore, the indictment was not multiplicitous and the convictions do not violate double jeopardy. *See State v. Jurden*, 239 Ariz. 526, 529, ¶ 11 (2016) (explaining the Double Jeopardy Clause protects against multiple convictions for the same offense based on "the same conduct").

## CONCLUSION

**¶57**      For the foregoing reasons, we affirm Winiker's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA

15