

## NUMBER 13-17-00016-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

---

**MARTIN THOMAS KILLINGER,**                                            **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                            **Appellee.**

---

### On appeal from the 430th District Court
### of Hidalgo County, Texas.

---

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes**
**Memorandum Opinion by Justice Perkes**

Appellant Martin Thomas Killinger was convicted of continuous sexual abuse of a young child, a first-degree felony, and indecency with a child by sexual contact, a second-degree felony.[1] *See* TEX. PENAL CODE ANN. §§ 21.02, 21.11(a)(1), (d). Punishment was

---

[1] Killinger was also tried and acquitted of sexual assault of a child by digital penetration.

assessed at twenty-eight years' imprisonment for the continuous-sexual-abuse offense and nine years' imprisonment for the indecency with a child by sexual contact, with the sentences to run concurrently. *See id.* §§ 12.33(a), 21.02(h). Killinger contends on appeal that (1) the evidence was legally insufficient to support his conviction for continuous sexual abuse of a child, and (2) as to both counts, the trial court abused its discretion by admitting testimony of an extraneous offense. We affirm.

## I. BACKGROUND

The complainant in this case is Killinger's niece, S.M.[2] In count one of the indictment, the State alleged that Killinger committed continuous sexual abuse of a young child "by touching any part of the genitals of [S.M.]" on two or more occasions during a period that was thirty or more days in duration when S.M. was younger than fourteen years old. *See id.* § 21.02. In count two, the State alleged that Killinger committed indecency with a child "by touching the breast of [S.M.]" when she was younger than seventeen years old. *See id.* § 21.11(a)(1), (c)(1).

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, Killinger contends the evidence does not support his conviction for continuous sexual abuse of a child because the State relied upon predicate offenses that are excluded from the statute. Thus, we must engage in statutory construction before turning to the sufficiency of the evidence.

---

[2] We refer to minor complainants by their initials to protect their privacy. *See* TEX. R. APP. P. 9.8 cmt. ("The rule [protecting the privacy for filed documents in civil cases] does not limit an appellate court's authority to disguise parties' identities in appropriate circumstances in other cases."); *Salazar v. State*, 562 S.W.3d 61, 63 n.1 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.).

## A. Standard of Review

Statutory construction is a question of law that we review de novo. *Sims v. State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019), (citing *Ramos v. State*, 303 S.W.3d 302, 306 (Tex. Crim. App. 2009)), *cert. denied*, 139 S.Ct. 2749 (2019). Our objective is to effectuate the Legislature's intent. *Id.* (citing *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). We start with the plain language of the statute, reading words and phrases in context according to the rules of grammar and usage. *Id.* (citing *Sanchez v. State*, 995 S.W.2d 677, 683 (Tex. Crim. App. 1999)). "If the language of the statute is plain, we follow that language unless it leads to absurd results that the legislature could not have possibly intended." *Id.*

In a sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Chambers v. State*, 580 S.W.3d 149, 156 (Tex. Crim. App. 2019); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In our analysis, we defer to "the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *see* TEX. CODE CRIM. PROC. ANN. art. 38.04. When the record contains conflicting inferences, we presume that the trier of fact resolved any such conflicts in favor of the prosecution, and we must defer to that resolution. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App.

2010). Additionally, we treat circumstantial evidence as being equally probative as direct evidence. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

## B.    Construing the Continuous-Sexual-Abuse Statute

There are eight predicate offenses that constitute an "act of sexual abuse" under the continuous-sexual-abuse statute. TEX. PENAL CODE ANN. § 21.02(c)(1)–(8). The predicate offenses relied upon by the State were indecency with a child by sexual contact. *See id.* §§ 21.02(c)(2), 21.11(a)(1). More specifically, the State alleged that Killinger made sexual contact "by touching any part of the genitals of [S.M.]" on two or more occasions at least thirty days apart while S.M. was younger than fourteen years old.

There are two general categories of offenses under the indecency statute, sexual contact under § 21.11(a)(1) and exposure under § 21.11(a)(2). *See id.* § 21.11(a). The indecency statute defines "sexual contact," in part, as "any touching by a person, including through the clothing, of the anus, breast, or any part of the genitals of a child," if committed with the intent to arouse or gratify the sexual desire of any person. *Id.* § 21.11(c)(1). Accordingly, "[a] person can engage in sexual contact by touching the anus, by touching

4

the breast, or by touching the genitals with the requisite intent. Each one of these acts represents a different offense." *Pizzo v. State*, 235 S.W.3d 711, 717 (Tex. Crim. App. 2007).

However, not every act constituting indecency with a child qualifies as an "act of sexual abuse." The term is limited by the continuous-sexual-abuse statute to include "indecency with a child under Section 21.11(a)(1), if the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child." TEX. PENAL CODE ANN. § 21.02(c)(2). Killinger interprets this provision to mean that "all touching is excluded." Killinger's interpretation is belied by the plain language of the statute; when we read the words and phrases in context according to the rules of grammar and usage, an "act of sexual abuse" includes all sexual contact under § 21.11(a)(1) other than touching the breast of a child. *Id.* § 21.02(c)(2); *see Kuhn v. State*, 393 S.W.3d 519, 543 (Tex. App.—Austin 2013, pet. ref'd) (acknowledging that touching a child's breast "cannot form the basis for a conviction under the continuous-sexual-abuse statute," but finding no error because appellant "was alleged to have committed the underlying offense of indecency with a child by contact by touching [the child's] genitals"); *see also Myers v. State*, No. 02-17-00392-CR, 2019 WL 2223578, at *1–2 (Tex. App.—Fort Worth May 23, 2019, pet. ref'd) (mem. op., not designated for publication) (finding jury charge error where definition of "act of sexual abuse" included touching the child's breast, but not egregious harm because the application paragraph "properly limit[ed] the jury to considering only Appellant's alleged acts of indecency of a child based on his touching the complainant's genitals").

Moreover, Killinger's interpretation would render § 21.02(c)(2) meaningless. As previously noted, indecency with a child by exposure, found under § 21.11(a)(2), is not included as an "act of sexual abuse." *See* TEX. PENAL CODE ANN. § 21.02(c)(2) (limiting the predicate offense to "indecency with a child under Section 21.11(a)(1)"). Therefore, if "all touching [were] excluded," as Killinger suggests, then no offense under the indecency statute would constitute an "act of sexual abuse," contrary to the Legislature's intent. *See id.* § 21.02(c)(2); *Sims*, 569 S.W.3d at 640 (citing *Boykin*, 818 S.W.2d at 785).

We conclude the predicate offenses charged by the State, indecency with a child "by touching any part of the genitals of [S.M.]," constituted "act[s] of sexual abuse" under the continuous-sexual-abuse statute. *See* TEX. PENAL CODE ANN. §§ 21.02(c)(2), 21.11(a)(1), (c)(1); *Kuhn*, 393 S.W.3d at 543; *see also Myers*, 2019 WL 2223578, at *1–2.

## C.      Sufficiency Review

Under a hypothetically correct jury charge, the State was required to prove that, with the intent to arouse or gratify the sexual desire of any person, Killinger touched the genitals of S.M. on two or more occasions during a period that was thirty or more days in duration while S.M. was younger than fourteen years old. *See* TEX. PENAL CODE ANN. §§ 21.02(c)(2), 21.11(a)(1), (c)(1).

S.M. testified at trial that Killinger began touching her breasts through her clothing when she was ten-years old and that this occurred "[p]robably around five times." Killinger "took it further" over time. Beginning when she was eleven, "[Killinger] would bend [S.M.] over the bed" and stand behind her with "[h]is private part" touching her "butt" and "back."

6

"It's like him pretending to have sex with me," S.M. testified, "basically like dry humping me." This "dry humping" occurred in Killinger's bedroom so often that S.M. "lost count." It also occurred on a couch in Killinger's movie room. S.M. would lay down, sometimes on her back and sometimes on her stomach, then Killinger would lay on top of her "and it would be the same thing over and over and over that he would be [sic] doing for years."

S.M. also testified about an incident that occurred in the backseat of a car when she was "about 13":

STATE:     And what exactly happened when y'all got to the carnival?

S.M.:     Before—after we parked—we parked sort of towards the dark, sort of towards like where the trees were. And before we were going to get off to walk towards the carnival, he told me to go to the back to the backseat, and he started, you know, doing—doing that.

STATE:     Do you remember if you were on your stomach or your back?

S.M.:     I was on my back.

STATE:     And where was his body?

S.M.:     On—on top of my . . .

STATE:     Was [sic] there parts of his body that were touching parts of your body?

S.M.:     His front—his front part of his body.

STATE:     Okay. And what—what area do you mean when you mean the front part?

S.M.:     His private part and then just his front chest.

STATE:     Could you feel his private part touching you?

S.M.:     Yes.

STATE: And in what area?

S.M.: Where my private part was.

STATE: How long did that take place?

S.M.: For a few minutes.

. . . .

STATE: Now, you described his private part touching your private part. Was this with clothes or without clothes?

S.M.: With clothes.

STATE: Were there other times that his private part touched your private part like the way this occurred?

S.M.: Yes.

STATE: How many times, would you say?

S.M.: More—more than ten times.

STATE: Do you remember when or if it progressed to something more?

S.M.: Yeah, I was about 14 or 15, and his fingers were inside my private part.

It was reasonable for the jury to infer from S.M.'s testimony that of the "more than ten times" Killinger "dry humped" S.M. with his "private part" touching hers, at least two of those incidents occurred during a period that was thirty or more days in duration while S.M. was younger than fourteen-years old. S.M. testified that the "dry humping" began when she was eleven and occurred at multiple locations "over and over . . . for years," including (1) on a couch at Killinger's house where S.M. would "sometimes" lay on her back and (2) the incident in the back of the vehicle when she was "about 13."

8

Reviewing the evidence in the light most favorable to the verdict, we determine that "a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Chambers*, 580 S.W.3d at 156. Killinger's first issue is overruled.

### III. EXTRANEOUS OFFENSE EVIDENCE

By his second issue, Killinger maintains that the trial court abused its discretion by admitting extraneous-offense evidence.

### A. Standard of Review

Admissibility decisions are reviewed for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019) (citing *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim App. 2006)). "Because trial courts are in the best position to decide questions of admissibility, appellate courts uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement." *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). An appellate court may not disturb an admissibility decision solely because the appellate court would have reached a different conclusion. *Id.* (citing *Montgomery*, 810 S.W.2d at 391). Instead, a "trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably." *Rhomer*, 569 S.W.3d at 669 (citing *Montgomery*, 810 S.W.2d at 380).

**B.     Applicable Law**

Generally, extraneous-offense evidence is not admissible to show that the charged offense is consistent with the defendant's character. TEX. R. EVID. 403(b)(1). However, Article 38.37 of the Texas Code of Criminal Procedure provides an exception to the general rule in prosecutions for certain sex offenses, including the ones charged here. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a)(1)(B), (C). Under that statute, evidence of other sex crimes committed by the defendant may be admitted "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *Id.* 38.37, § 2(b).

To admit evidence under article 38.37, § 2, the trial court must first conduct a hearing outside the presence of the jury and determine that "the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." *Id.* art. 38.37, § 2-a. Upon proper objection, the trial court must also conduct a balancing test under Rule 403, excluding the evidence if its probative value is "substantially outweighed" by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403.

A Rule 403 analysis requires the trial court to consider:

(1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

10

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

A Rule 403 ruling should be analyzed within the context of that particular trial, considering "the ebb and flow of trial testimony, the unique circumstances and facts, and the specific contested issues." *State v. Mechler*, 153 S.W.3d 435, 443 (Tex. Crim. App. 2005) (Cochran, J., concurring) (citation omitted). The Texas Court of Criminal Appeals has cautioned that in reviewing a trial court's Rule 403 balancing determination, we are to "reverse the trial court's judgment rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

## C.  The Extraneous-Offense Evidence

After the State made its opening statement and Killinger reserved his opening, the State called S.M.'s mother (Mother), also Killinger's biological sister, as its first witness. Mother testified that as she entered her home one evening, she heard "sex noises" that she initially attributed to a TV. Then she discovered Killinger and S.M. together in S.M.'s bedroom with the lights out.

> STATE:   And what did you see?
>
> MOTHER:   [S.M.] was bent over on the bed, and [Killinger] was right behind her.
>
> STATE:   Now, when you say that she was bent over on the bed, was her whole body on the bed?
>
> MOTHER:   From her waist up she was.
>
> STATE:   So her waist up was on the bed?
>
> MOTHER:   Yes.
>
> STATE:   And you said that he was behind her?

11

MOTHER:    Yes.

STATE:      Did they have clothes on?

MOTHER:    Yes.

STATE:      Were their bodies touching?

MOTHER:    Yes.

STATE:      What did it look like to you?

MOTHER:    To me, it—the way they were standing its' like—like a sex position or—it didn't look right.

According to Mother, Killinger claimed he was massaging S.M.'s back. Later that evening, though, S.M. made an outcry statement to Mother that Killinger had been sexually abusing her "since she was ten."

At this point, before the State passed the witness for Killinger's cross examination, the State sought to introduce evidence that Killinger committed extraneous offenses against Mother when she was a child. *See* TEX. CODE CRIM. PRO. ANN. art. 38.37 § 2(b). The trial court conducted a hearing outside the presence of the jury, and Mother, forty-three years old at the time of trial, testified that Killinger engaged in similar behavior with her when she was "[m]aybe nine, ten years old." Killinger would lend her money in exchange for "pumps." That is, Mother would bend over and Killinger would stand behind her and simulate having sex with her.

Killinger asked the trial court to exclude Mother's testimony:

We'd oppose the introduction of this testimony. It's not—first of all, it's so remote in time. It's 30—over 30 years old, and I'm not sure why it's being offered. It's not to prove motive or opportunity or intent, preparation, plan, knowledge, identity, absence of mistake or accident, consciousness of guilt.

12

I don't see how they would come in, Judge. It's not an exception. Again, because it happened just so long ago. There's no—there's nothing that we can do to—to defend ourselves against something like that, some allegation that's so remote in time. It would be so prejudicial to—to introduce it before this jury.

The State responded that Mother's testimony was being offered under Article 38.37, not as an exception to Rule 404(b), and that it was relevant because "[t]he act that [Mother] saw that [Killinger] was doing to her underage child is the same thing that he did to her when she was a child. Additionally, it could be used to show the character of the defendant and conformity with the character."

The trial court agreed with the State, announcing on the record that: (1) Mother's testimony was adequate to support a finding by the jury that Killinger committed the separate offense beyond a reasonable doubt; (2) Mother's testimony was relevant to Killinger's character and whether the acts he was charged with were in conformity with his character; and (3) the probative value of the evidence outweighed its prejudicial effect. Mother then provided the same testimony in the presence of the jury.

## D.    Article 38.37 Analysis

Killinger first contends that Mother's extraneous offense testimony was not relevant under Article 38.37 because the acts described by Mother and S.M., although very similar, were not the same acts relied upon by the State in charging Killinger. *See id.* (providing that extraneous offense evidence may be admitted "for any bearing the evidence has on relevant matters"). Killinger argues he was not prosecuted based on S.M.'s allegations that Killinger dry humped her from behind on numerous occasions, touching her "butt" and "back" with his "private part," even though this conduct met the

13

other definition of "sexual contact" under the indecency statute. *See* TEX. PENAL CODE ANN. § 21.11(c)(2) (defining "sexual contact" to include "any touching of any part of the body of a child, including touching through clothing, with . . . any part of the genitals of a person"). Instead, Killinger contends the State charged him with touching S.M.'s "genitals" based on the less frequent dry humping that occurred while S.M. laid on her back. *See id.* § 21.11(c)(1).

Regardless, Killinger presented several objections to the trial court regarding Mother's testimony, none of which were based on this particular legal argument. *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."). Killinger first objected that the evidence was too "remote in time" to be probative.[3] Killinger then objected that the evidence did not meet any of the exceptions for the admission of extraneous offenses under Rule 404(b). *See* TEX. R. EVID. 404(b)(2) (stating that extraneous offense evidence may be admitted to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). Killinger also invoked Rule 403 by contending that the evidence "would be so prejudicial." *See* TEX. R. EVID. 403. Finally, after the State explained that it was introducing the evidence under Article 38.37, Killinger also suggested that, because the incident was "so remote," the testimony was not adequate to support a jury finding that Killinger committed

---

[3] On appeal, Killinger couches his remoteness argument in the context of Rule 403, which we address below.

the offense beyond a reasonable doubt.[4] *See* TEX. CODE CRIM. PRO. ANN. art. 38.37 § 2-a(1).

Therefore, Killinger failed to preserve this complaint for appellate review.[5] *See* TEX. R. APP. P. 33.1(a). We overrule Killinger's first sub-issue concerning the admission of Mother's extraneous-offense evidence.

## E.     Rule 403 Analysis

Killinger also contends that Mother's testimony should have been excluded under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403.

### 1.     Probative Value and the State's Need for the Evidence

The phrase "probative value" in Rule 403 means more than mere relevance; the phrase refers to "how strongly [the evidence] serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Gigliobianco*, 210 S.W.3d at 641. Evidence of a defendant's prior sexual abuse of children is "especially probative of [the defendant's] propensity to sexually assault children." *Belcher v. State*, 474 S.W.3d 840, 848 (Tex. App.—Tyler 2015, no pet.); *see Gayton v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd) (holding that evidence that defendant had committed extraneous sexual offenses against two other children was "straightforward and directly relevant to the only issue in the case, namely whether [the defendant] had abused [the complainant]"); *see also Caston v. State*,

---

[4] On appeal, Killinger does not take issue with the trial court's finding in this regard.

[5] As the discussion below will demonstrate, even if Killinger had preserved this error, the evidence was clearly relevant.

15

549 S.W.3d 601, 612 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("[E]vidence that a defendant has sexually abused another child is relevant to whether the defendant sexually abused the child-complainant in the charged case." (citing *Robisheaux v. State*, 483 S.W.3d 205, 220–21 (Tex. App.—Austin 2016, pet ref'd))).

We agree with Killinger that the remoteness of the prior offenses, having occurred thirty-three years ago, dampened the probative value of Mother's testimony. *See Reyes v. State*, 69 S.W.3d 725, 740 (Tex. App.—Corpus Christi–Edinburg 2002, pet. ref'd) (noting that remoteness of prior offenses affects their probative value but does not automatically render the evidence inadmissible on that basis). However, the similarities between the offenses—that Killinger began performing the same simulated sex acts on Mother and S.M. when they were close to the same age—bolstered the probative value of Mother's testimony. *See Robisheaux,* 483 S.W.3d at 220 ("[W]e believe that the district court could have reasonably determined that the remarkable similarities between the extraneous offenses and the charged offenses strengthened the probative force of the evidence."). Under these circumstances, it would have been reasonable for the trial court to conclude that the overall probative value of Mother's testimony favored admissibility. *See, e.g.*, *West v. State*, 554 S.W.3d 234, 239 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (permitting evidence "that appellant committed a lewd or lascivious act upon a ten-year-old girl about twenty-nine years before the trial" where the case at bar involved a ten-year-old complaining witness).

Next, we look to the State's need for the evidence. *See Gigliobianco*, 210 S.W.3d at 641. At the time it was admitted, the State's need for Mother's testimony concerning

the extraneous offenses was not particularly great. One of the principal reasons for allowing extraneous-offense evidence under Article 38.37 is the lack of corroborating evidence typically associated with these types of cases. *Bradshaw v. State*, 466 S.W.3d 875, 884 (Tex. App.—Texarkana 2015, pet. ref'd) (citing Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 12, 83d Leg., R.S. (2013)). Although there was no physical evidence, this was not a "he said, she said" case that turned solely on the relative credibility of S.M. and Killinger; right before her extraneous-offense testimony was admitted, Mother testified as an eyewitness to the charged sexual abuse. *See Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009).

The circumstances of this case are also somewhat unusual in that the State offered Mother's extraneous-offense testimony before Killinger made an opening statement or cross examined a witness. In other words, Killinger had not "opened the door" for the State to rebut a defensive theory with extraneous-offense evidence under Rule 404(b), which would have increased the State's need for such evidence under a Rule 403 analysis. *See* TEX. R. EVID. 404(b)(2); *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) ("Our case law supports a decision that a defense opening statement, like that made in this case, opens the door to the admission of extraneous-offense evidence, like that admitted in this case, to rebut the defensive theory presented in the defense opening statement." (citing *Powell v. State*, 63 S.W.3d 435 438–40 (Tex. Crim. App. 2001))).

Although the State did not have a great need for the evidence, we cannot say the State had no need; after all, there was no physical evidence and it was offered to show

17

that Killinger was acting in conformity with his character when he sexually abused S.M., a reason expressly authorized by Article 38.37. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37 § 2(b). When we couple the probative value of Mother's testimony with the State's need for the evidence, this factor weighs in favor of admissibility. *See Gigliobianco*, 210 S.W.3d at 641.

### 2.    Decision on an Improper Basis

The phrase "unfair prejudice" in Rule 403 "refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Gigliobianco*, 210 S.W.3d at 641 (citing *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005)). We acknowledge that extraneous-offense evidence of this nature is inherently inflammatory, and therefore clearly prejudicial. *See Pawlak v. State*, 420 S.W.3d 807, 809 (Tex. Crim. App. 2013) ("We have held that sexually related bad acts and misconduct involving children are inherently inflammatory." (citing *Montgomery*, 810 S.W.2d at 397)). However, Rule 403 does not call for the exclusion of all prejudicial evidence; rather, it only allows exclusion of *unfairly* prejudicial evidence. *Caston*, 549 S.W.3d at 612.

Here, Mother's testimony "discussed actions that were no more serious than the allegations forming the basis of the indictment." *See Robisheaux*, 483 S.W.3d at 221. In fact, Mother's testimony about simulated sex was less serious than S.M.'s testimony that Killinger also digitally penetrated her sexual organ. Moreover, Killinger "does not identify any particular facts" about Mother's testimony that make it "uniquely or unfairly prejudicial." *See Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.]

18

2016, pet. ref'd); *see, e.g.*, *Pawlak*, 420 S.W.3d at 811 (concluding that the "sheer volume" of 9,900 images of pornography, including homosexual child pornography, was unfairly prejudicial extraneous-offense evidence in a sexual assault case). Thus, although Mother's testimony was prejudicial to Killinger, he has not demonstrated that it was *unfairly* prejudicial. *See Pawlak*, 420 S.W.3d at 811 ("[T]he plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial."). This factor weighs in favor of admission.

### 3. Confusion of the Issues and Undue Weight

The phrase "confusion of the issues" in Rule 403 "refers to a tendency to confuse or distract the jury from the main issue in the case." *Gigliobianco*, 210 S.W.3d at 641 (citation omitted). The phrase "misleading the jury" "refers to a tendency of any item of evidence to be given undue weight by the jury on other than emotional grounds. For example, 'scientific' evidence might mislead a jury that is not properly equipped to judge the probative force of the evidence." *Id.* (citations omitted).

Mother's testimony was straightforward and directly relevant to the only issue in this case—whether Killinger abused S.M. Additionally, any potential risk of confusion or undue weight given to Mother's testimony was mitigated by the trial court's jury charge instruction:

> You are instructed that the Court has admitted testimony before you in this case regarding the Defendant's having committed offenses other than the offense alleged against him in the indictment in this case. You cannot consider said testimony for any purposes unless you find and believe beyond a reasonable doubt that the Defendant committed such other offenses, if any were committed, and even then, you may only consider the same in determining the intent, if any, or the state of mind, if

19

any, of the Defendant alleged against him in this indictment in this case, and for no other purpose.[6]

We presume that the jury obeyed these instructions. *See Curry v. State*, 541 S.W.3d 751, 758 (Tex. Crim. App. 2017); *see also*, *Chasco v. State*, 568 S.W.3d 254, 261 (Tex. App.—Amarillo 2019, pet. ref'd) (finding trial court did not abuse its discretion in permitting testimony regarding extraneous offenses when the "jury was instructed that it could consider the testimony regarding appellant's extraneous offenses . . . only if it found beyond a reasonable doubt that appellant committed the offenses"). Consequently, this factor weighs in favor of admission.

### 4. Undue Delay and Needless Presentation of Cumulative Evidence

The last two factors concern the efficiency of the trial proceeding rather than the threat of an inaccurate decision. *Gigliobianco*, 210 S.W.3d at 641. As Killinger acknowledges in his brief to this Court, the time the State devoted to developing this evidence "was not that great." The entire direct and cross examination of Mother on this particular issue spans a combined six pages of a reporter's record that contains several hundred pages of testimony. *See Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996) (holding that extraneous-offense testimony amounting to "less than one-fifth" of trial testimony favored admission). Accordingly, these factors weigh in favor of admission.

### 5. Conclusion

Even though the first factor did not weigh heavily in favor of admission, none of the

---

[6] We note that this limiting instruction does not track the stated purpose for admitting the extraneous-offense evidence—namely, character conformity under Article 38.37. To the extent the instruction was erroneous, it benefited Killinger by limiting the jury's consideration of the evidence to non-character-conformity purposes under Rule 404(b)(2). *See* TEX. R. EVID. 404(b)(1), (2).

countervailing factors weighed in favor of exclusion. Thus, the probative value of the evidence was not "substantially outweighed" by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. *See* TEX. R. EVID. 403. We conclude the trial court's decision to admit this evidence was within the zone of reasonable disagreement, and thus not an abuse of discretion. *See Cameron*, 241 S.W.3d at 19 (citing *Montgomery*, 810 S.W.2d at 391). Killinger's second issue is overruled.

## IV. CONCLUSION

The trial court's judgment is affirmed.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
13th day of February, 2020.