IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————————————

**IN THE MATTER OF A MEMBER**
**OF THE STATE BAR OF ARIZONA**

**JUAN M. MARTINEZ,**
**ATTORNEY NO. 9510**
*Respondent.*

———————————————

No. SB-17-0081-AP
Filed April 30, 2020

———————————————

Appeal of Hearing Panel Opinion and Disciplinary Order from the
Office of the Presiding Disciplinary Judge
The Honorable William J. O'Neil, Presiding Judge
No. PDJ20179044
**AFFIRMED IN PART, VACATED IN PART**
**REPRIMAND IMPOSED**

———————————————

COUNSEL:

J. Scott Rhodes, Kerry Hodges, Jennings, Strouss & Salmon P.L.C., Phoenix, Attorneys for Juan M. Martinez

Craig D. Henley, Senior Bar Counsel, State Bar of Arizona, Phoenix, Attorney for State Bar of Arizona

Mikel Steinfeld, Phoenix; and James J. Belanger, J. Belanger Law PLLC, Tempe, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice

Jared G. Keenan, American Civil Liberties Union Foundation of Arizona, Phoenix, Attorney for Amici Curiae American Civil Liberties Union and American Civil Liberties Union of Arizona

Timothy J. Agan, Lindsay Herf, Arizona Justice Project, Phoenix, Attorneys for Amicus Curiae Arizona Justice Project

———————————————

JUSTICE LOPEZ authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, JUSTICES BOLICK, GOULD, and BEENE joined.[*]

_____

JUSTICE LOPEZ, Opinion of the Court:

¶1        We consider whether prosecutor Juan M. Martinez's conduct, characterized in five Arizona appellate court decisions as "prosecutorial misconduct" that did not rise to the level requiring reversal of criminal convictions, violates attorney ethical rules. We affirm the disciplinary hearing panel's ("the panel") determination that Martinez did not violate Supreme Court Rule 41(g) and Arizona Rule of Professional Conduct ("ER") 4.4(a). We conclude, however, that Martinez violated ER 8.4(d) and we impose the State Bar's ("the Bar") requested sanction of reprimand.

## BACKGROUND

¶2        Martinez was licensed to practice law in Arizona in 1984. He has served as a prosecutor at the Maricopa County Attorney's Office since 1988. On September 28, 2016, following the Bar's investigation of Martinez's conduct as a prosecutor in five capital murder prosecutions spanning nearly ten years, the Attorney Discipline Probable Cause Committee ("the Committee") found that probable cause existed that Martinez violated Rule 41(g) and ERs 4.4(a) and 8.4(d). The Committee issued an Order of Admonition and Probation requiring Martinez to complete nine hours of continuing legal education and professionalism courses and to pay costs. Martinez objected to the order and demanded formal proceedings.

¶3        The Bar filed a formal disciplinary complaint against Martinez and the matter proceeded to a hearing. At the September 12, 2017, hearing, the Bar called four witnesses, including expert Paul Charlton, and Martinez called one witness, expert Thomas Zlaket. Martinez did not testify. Following the hearing and a brief recess, the panel dismissed the complaint. On November 27, 2017, the panel issued a decision and order dismissing the complaint with prejudice. The panel held, in sum, that the Bar had failed to prove by clear and convincing evidence that Martinez violated any ethical rule.

_____

[*] Justice William G. Montgomery has recused himself from this case.

¶4 The Bar appealed the panel's order. On January 18, 2018, this Court remanded the case to the panel to make supplemental findings of fact and conclusions of law. On September 21, 2018, the panel made these findings, again holding that the Bar failed to prove Martinez violated any ethical rule.

¶5 We have jurisdiction pursuant to Article 3 and Article 6, Sections 1, 5(3), and 5(4) of the Arizona Constitution.

## DISCUSSION

### I. Standard of Review

¶6 The Bar must prove allegations of misconduct by clear and convincing evidence, Ariz. R. Sup. Ct. 58(j)(3), which are proven by showing it was "highly probable" that the allegations are true. *In re Alexander*, 232 Ariz. 1, 5 ¶ 11 (2013). We review the panel's conclusions of law de novo and its findings of fact by a clearly erroneous standard. *Id.*; Ariz. R. Sup. Ct. 59(j). "Findings are clearly erroneous if they are not supported by reasonable evidence." *In re Alexander*, 232 Ariz. at 5 ¶ 11.

### II. Special Duties of a Prosecutor

¶7 The panel began its supplemental findings and conclusions by stating, "This is a case involving a prosecutor whose job it is to seek executions and a prosecution of him that was not well executed." This statement mischaracterizes the role of a prosecutor. We could not disagree more strongly with the first part of this statement. The role of a prosecutor is not to seek convictions and sentences but rather to seek justice:

> [T]he prosecutor is not the representative of an ordinary litigant; he is a representative of a government whose obligation to govern fairly is as important as its obligation to govern at all. The prosecutor's interest in a criminal prosecution "is not that it shall win a case, but that justice shall be done." Thus, "while he may strike hard blows, he is not at liberty to strike foul ones." It is the prosecutor's duty to refrain from improper methods calculated to produce a wrongful conviction just as it is his duty to use all proper methods to bring about a just conviction.

*Pool v. Superior Court*, 139 Ariz. 98, 103 (1984) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

¶8        Prosecutors' unique role in the justice system is recognized in ER 3.8, "Special Responsibilities of a Prosecutor," which states that "[a] prosecutor has the responsibility of a minister of justice and not simply that of an advocate," and has the duty to "see that the defendant is accorded procedural justice, that guilt is decided upon the basis of sufficient evidence, and that special precautions are taken to prevent and to rectify the conviction of innocent persons." *See also In re Peasley*, 208 Ariz. 27, 35 ¶ 34 (2004) (noting that "courts generally recognize that the ethical rules impose high ethical standards on prosecutors"). Thus, prosecutors must act as "ministers of justice and exercise professionalism even in the heat of trial." *State v. Hulsey*, 243 Ariz. 367, 394 ¶ 123 (2018).

### III.    The Cases

¶9        The Bar alleges that Martinez violated ethical rules by committing prosecutorial misconduct in the following five capital murder cases:

### A.    *State v. Morris*

¶10        Martinez prosecuted the defendant in 2005 for murdering five women. Following conviction, Morris was sentenced to death. On direct appeal, this Court reviewed Martinez's remarks on the "putrid" odor of one victim's jacket—offered by Martinez to the jury for its "smelling pleasure"—and concluded that they were "inappropriate," but not misconduct. *State v. Morris*, 215 Ariz. 324, 338 ¶¶ 62–64 (2007).

¶11        We also reviewed Martinez's interaction with the jury during argument, including his singling out members of the jury based on their appearance and gender and addressing them personally. *Id*. at 337–38 ¶¶ 57–61. For example, Martinez queried:

> [W]hich one of you wants to volunteer? I want a show of hands on this one. Which one of you ladies—and we don't need guys on this one, because he didn't take guys. He only took women.
>
> Which one of you want [sic] to volunteer to come sit here and have the defendant sit himself on your chest and say, Oh, that didn't hurt? Because the defense attorney is saying throw common sense out of [the] window. Which one? I challenge anybody to say, That is something I want to do.
>
> And anyway, and on top of that, while he's sitting on my chest, which one of you, since the one lower left-hand side has the longer hair of the jurors,

maybe she wants to have him grab her hair while he's sitting on her chest . . . to grab it and pull it around her neck.

You think that's not going to hurt? You think one of you guys is going to volunteer for that? You can't leave your common sense aside. [Defense counsel] wants you to because he makes these arguments and says, well, we don't know what is in their heads. We don't know what is in Juror Number 1's head. Can you tell me you don't think it's not going to hurt when he sits on you?

Hey, Juror Number 1 or Juror Number 14, whatever it is, what if we put [the] Winnie the Pooh tie around your neck? Are you going to enjoy that? Are you going to like it? Going to feel real good when you can't breathe?

*Id.* at 337 ¶ 58 n.6. We concluded that Martinez's comments constituted misconduct because he impermissibly inflamed the jury's sympathy for the victims and exploited its fear of the defendant. *Id.* ¶ 58.

### B. *State v. Beemon*

¶12        Martinez prosecuted the defendant for murder. Beemon testified during the guilt phase of his trial, admitting a 1997 drug conviction without mentioning a 1984 robbery conviction that the trial court had ruled inadmissible during that phase. *State v. Beemon*, 1 CA-CR-05-1161, at 16 ¶ 23 (Ariz. App. Feb. 21, 2008), https://www.azcourts.gov/Portals/0/OpinionFiles/Div1/2008/1%20CA-CR%2005-1161-82958.PDF.

¶13        During the aggravation phase opening statement and closing argument, Martinez "attacked" Beemon for his "dishonesty" in failing to reveal his 1984 robbery conviction during his guilt-phase testimony. *Id.* at 17 ¶ 27. Martinez also insisted at a bench conference during the aggravation phase that the defendant had no right to "withhold information" from the jury regarding the robbery conviction. *Id.* at 17–18 ¶ 27. The court of appeals concluded that Martinez's remarks were "clearly improper" because the trial court had precluded mention of the 1984 conviction. *Id.*

¶14        The court of appeals also described Martinez's characterization of defense counsel's argument in the aggravation phase as "reprehensible" and "both improper and unprofessional," notwithstanding the "apparent vigor of defense counsel's argument." *Id.* at 18–22 ¶¶ 28–32. There, Martinez repeatedly analogized defense counsel's argument to Hitlerian propaganda tactics — the "big lie" — in an attempt to rebut the defense's claim

that Martinez was misleading the jury. *Id.* The court of appeals affirmed Beemon's conviction and sentence, finding that reversal for prosecutorial misconduct was unwarranted, but instructed the court's clerk to forward a copy of its decision to the Bar to review Martinez's conduct. *Id.* at 21–22 ¶¶ 32–33.

### C.    *State v. Gallardo*

**¶15**    Martinez prosecuted the defendant for first degree murder, burglary, and kidnapping of the victim in his family's home. In response to defense counsel's penalty phase argument to the jury for a life sentence, Martinez invoked the victim's family's loss, including that the victim's father would never be able to speak with his murdered son, and he persisted with a line of argument concerning a defense expert witness' alleged bias despite the trial court repeatedly sustaining defense counsel's objections. *State v. Gallardo*, 225 Ariz. 560, 569 ¶¶ 41–44 (2010). We found Martinez's conduct "improper," noting "[a] prosecutor should not repeat an argument after it has been the subject of a sustained objection," but we concluded that no pervasive misconduct deprived Gallardo of a fair trial. *Id.*

### D.    *State v. Lynch (II)*

**¶16**    After convicting Lynch of a 2001 felony murder, the jury failed to reach a verdict on the penalty. Following a new penalty phase, Lynch was sentenced to death. On direct appeal in 2010, this Court ordered a new trial on the penalty phase because an aggravating factor was applied improperly, but we found no prosecutorial misconduct warranting reversal. *State v. Lynch*, 225 Ariz. 27, 42–43 ¶¶ 82–88 (2010). In *Lynch II*, following the jury's return of a death verdict, we considered Martinez's conduct in the retrial of the penalty phase. 238 Ariz. 84, 92 ¶ 6 (2015), *rev'd,* 136 S. Ct. 1818 (2016).

**¶17**    There, we found Martinez "improperly made argumentative statements during opening," but concluded "the misconduct" did not affect the jury's verdict, the "aggressive" questioning of witnesses, including experts, did not constitute fundamental error, and the alleged ad hominem attacks on defense counsel were criticisms aimed at defense theories, not counsel, and were not improper. *Id.* at 92 ¶ 10, 95 ¶ 22, 100 ¶¶ 47–49. We also found that Martinez "invited the jurors to place themselves in the victim's position and appealed to their fears" when he told them "they could not know what it was like to be 'manhandled' by the knife-wielding defendant." *Id.* at 100 ¶ 49. We concluded that "prosecutorial misconduct, while present in some instances, was not so pronounced or sustained as to require a new sentencing trial." *Id.* at 101 ¶ 52.

E.      *State v. Arias*

¶18      Martinez prosecuted the defendant for first degree murder.  At trial, during a bench conference outside the presence of the jury while discussing defense counsel's attempt to introduce a witness's testimony that the victim told Arias he wanted to "f\*\*king kill himself," Martinez said he would "f'ing want to kill [him]self" if he were married to defense counsel.  Martinez promptly apologized but disparaged counsel again by suggesting she go back to law school.  Defense counsel moved to dismiss the indictment or notice of intent to seek the death penalty based, in part, on Martinez's comments.  The trial court denied the motion, reasoning that the comments were made outside the presence of the jury, no juror indicated knowledge of the incident, and Martinez was quick to acknowledge his error and expressed regret.  The court of appeals affirmed Arias' convictions, but described Martinez's pervasive misconduct, including his comments to defense counsel at issue here, as "an egregious case of misconduct by a highly-experienced prosecutor" and referred the matter to the Bar for review.  *State v. Arias*, 1 CA-CR 15-0302, at 27 ¶ 77 (Ariz. App. April 21, 2020).

¶19      Thus, in *Morris*, *Beemon*, *Gallardo*, *Lynch II*, and *Arias*, Arizona appellate courts found that Martinez engaged in various forms of prosecutorial misconduct that did not warrant reversal of convictions.  To date, Martinez's prosecutorial misconduct in these cases has not resulted in disciplinary findings of ethical misconduct.[1]

IV.      **Ethical Misconduct**

A.      **Rule 41(g): Duties and Obligations of Members**

¶20      Rule 41(g) provides that the duties and obligations of Bar members shall be "[t]o avoid engaging in unprofessional conduct and to advance no fact prejudicial to the honor or reputation of a party or a witness unless required by the duties to a client or the tribunal."  "Unprofessional conduct, as defined by Rule 31(a)(2)(E), during the practice of law may result in discipline pursuant to Rule[] 41(g) . . . ."  Ariz. R. Sup. Ct. 41, cmt. 1 (2016).

¶21      Rule 31(a)(2)(E) defines "[u]nprofessional conduct" as "substantial or repeated violations of the Oath of Admission to the Bar ["the Oath"] or the Lawyer's Creed of Professionalism of the State Bar of Arizona ["the Creed"]."  The Oath provides,

---

[1] There is no evidence that the Bar received or acted on the court of appeals' referral in *Beemon*.

in relevant part, that lawyers "will avoid engaging in unprofessional conduct," "will not advance any fact prejudicial to the honor or reputation of a party or witness" unless required by their duties to their client or the tribunal, "will support the fair administration of justice" and "professionalism among lawyers," and "will at all times faithfully and diligently adhere to the rules of professional responsibility and A Lawyer's Creed of Professionalism." The Creed provides that, in representing a client, a lawyer must be cognizant that "unprofessional conduct is detrimental to the proper functioning of our system of justice."

¶22　　　　The panel observed that "Rule 41(g) is a two-part Rule that initially states what is 'aspirational' for members of the State Bar." The Bar contends that the panel erred by characterizing Rule 41(g) as aspirational. Although we do not interpret the panel's decision as applying an incorrect standard, we clarify that because unprofessional conduct is actionable under Rule 41(g), the rule is not merely aspirational. Ariz. R. Sup. Ct. 41(g), cmt. 1 (2016) ("Unprofessional conduct, as defined by Rule 31(a)(2)(E), during the practice of law may result in discipline pursuant to Rules 41(g) and 53(j).").

¶23　　　　The Bar argues, and Martinez concedes, that the panel erroneously construed Rule 41(g) in the conjunctive such that a violation occurs only when a lawyer engages in unprofessional conduct *and* advances a fact prejudicial to the honor or reputation of a party or witness. We agree. Rule 41(g) must be read in the disjunctive because its text proscribes both types of misconduct but does not require evidence of both to prove a violation.

¶24　　　　The Bar alleged that Martinez's conduct in *Morris*, *Beemon*, and *Arias* was unprofessional and, thus, violated Rule 41(g). The Bar contended that Martinez's "smelling pleasure" comments about a victim's jacket in *Morris*, his reference to defense counsel's Hitlerian tactics (the "big lie") in *Beemon*, and his comments about defense counsel concerning an expletive in testimony that defense counsel sought to present to the jury in *Arias* violate the rule.

¶25　　　　Martinez argues that the Bar's allegations concerning Rule 41(g) violate his due process rights because it never explained until its opening brief here which of the numerous duties enumerated in the Oath or Creed he allegedly violated. We disagree. The language of Rule 41(g) is materially identical to a portion of the Oath and the Creed which provides that "unprofessional conduct is detrimental to the functioning of our justice system." In any event, the Bar adequately explained the basis for its Rule 41(g) allegations in its prehearing memorandum before the panel hearing. Thus, Martinez received adequate notice of the alleged Rule 41(g) violations.

¶26  The Bar argues the panel erred by not finding a violation of Rule 41(g) in *Morris*. The panel concluded that Martinez's "smelling pleasure" comment, in which he remarked about the putrid odor of a murder victim's jacket that was properly admitted as evidence, did not violate the rule. The panel concluded that Martinez's conduct was not improper because this Court determined the jacket was properly admitted into evidence and that Martinez's "smelling pleasure" comment was, "at worst," "offhand," and "inappropriate." The panel also noted that Martinez's and the Bar's experts found the remark inartful but not deserving of discipline. We agree. Although Martinez's comments about a victim's jacket were unseemly, they were not unprofessional as contemplated by Rule 41(g).

¶27  The Bar contends that the panel erred in concluding that Martinez did not violate Rule 41(g) in *Beemon* for his "big lie" comments because Martinez was justified in responding to defense counsel's attacks on his character. Although we do not condone Martinez's remarks, and note that he should have selected a less inflammatory analogy to make his point, we agree that his conduct, when viewed in context, does not violate Rule 41(g) because it was directed at defense counsel's argument rather than at counsel personally.

¶28  Finally, the Bar contests the panel's determination that Martinez's comments to defense counsel at sidebar in *Arias* did not violate Rule 41(g). At the sidebar discussion, Martinez explained his hearsay objection to defense counsel's attempt to introduce a witness's testimony that the victim told Arias he wanted to "f**king kill himself." In this context, Martinez said, "[b]ut the thing is that if [defense counsel] and I were married, I certainly would say I f'ing want to kill myself. That doesn't mean I want to kill myself. It just means there's a bad relationship and I want you to leave me alone." The panel reasoned that Martinez did not violate Rule 41(g) because his comment was made in the context of an evidentiary objection, defense counsel "likewise intended to have the victim disrespected in the eyes of the jury by the hearsay use of the expletive she sought to have attributed to him," and both experts testified that the sidebar conduct was not worthy of a sanction. We agree that Martinez's comments outside the presence of the jury, although inappropriate, were made in the context of explaining his evidentiary objection and mimicking the expletive defense counsel sought to present to the jury and were mitigated by his prompt apology to defense counsel and the court. The panel did not address Martinez's bench conference comment that defense counsel "ought to go back to law school" and the Bar did not provide additional argument in its brief here. Notwithstanding, attorneys should refrain from such contemptuous behavior. Again, Martinez fell far short of a model of professionalism but, in context, his conduct did not violate Rule 41(g).

### B.       ER 4.4(a): Respect for Rights of Others

¶29       ER 4.4(a) states, "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden any other person, or use methods of obtaining evidence that violate the legal rights of such a person."

¶30       The Bar alleged that Martinez violated E.R. 4.4(a) in (1) his attempt to discredit the defendant in *Beemon* at the aggravation phase with his failure to disclose his 1984 robbery conviction during his guilt-phase testimony, even though the trial court had precluded its guilt-phase admission, and (2) his insistence at a bench conference during the aggravation phase that the defendant had no right to "withhold information" from the jury regarding the robbery conviction because the conduct served no other purpose than to embarrass, delay, or burden Beemon and his counsel.

¶31       The panel held that the Bar failed to prove that Martinez's conduct in *Beemon* violated ER 4.4(a) because it provided no evidence, much less clear and convincing evidence, that Martinez's subjective purpose was to embarrass, delay or burden the defendant or his counsel.  The panel noted the Bar's failure to call Martinez to testify concerning his motive for pursuing the contested trial tactics.  Although the panel could consider Martinez's subjective motive in evaluating an ER 4.4(a) violation, ultimately it was required to apply an objective standard. *In re Alexander*, 232 Ariz. at 7 ¶ 23.  Thus, Martinez's failure to testify did not impede the panel's ability to objectively assess his conduct.

¶32       Martinez argued at trial that he was entitled to discredit Beemon at the aggravation phase—in which the 1984 robbery conviction was properly admitted for aggravation purposes—because Beemon had misled the jury during his guilt-phase testimony about the circumstances of his 1997 robbery conviction to gain sympathy from the jury. *Beemon*, 1 CA-CR-05-1161, at 16–17 ¶¶ 23–27.  Although Martinez's reasoning was legally flawed, we agree with the panel's conclusion that the Bar provided insufficient evidence that Martinez's purpose was to embarrass, delay, or burden other parties rather than to counter the defendant's perceived deception of the jury.  Therefore, we conclude that the Bar failed to prove an ER 4.4(a) violation by clear and convincing evidence.

### C.     ER 8.4(d): Misconduct

¶33       ER 8.4(d) provides "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice."  ER 8.4(d) "does not require a mental state other than negligence," *In re Alexander*, 232 Ariz. at 11 ¶ 40, and an

Arizona lawyer may violate the rule without committing any other ethical violation, *see In re Clark*, 207 Ariz. 414, 418 ¶¶ 16–17 (2004). A lawyer's conduct violates ER 8.4(d) if it causes injury or potential injury. *Id* at ¶ 17.

¶34 The Bar alleged that Martinez's comments to juries in *Morris*, *Gallardo*, and *Lynch II*, his repeated disregard of sustained objections during closing argument in *Gallardo*, and his continued insistence at a bench conference that the defendant had no right to "withhold information" from the jury regarding his 1984 robbery conviction in *Beemon* were professional misconduct and, thus, violated ER 8.4(d), because they were prejudicial to the administration of justice.

¶35 The panel erred by relying on out-of-jurisdiction cases inconsistent with Arizona law—e.g., *In re Discipline of Att'y*, 815 N.E.2d 1072 (Mass. 2004)—for the proposition that ER 8.4(d) requires a violation of another ethical rule "unless [the violation] is so egregious and flagrantly violative of accepted professional norms as to undermine the legitimacy of the judicial process." As we have previously stated, an Arizona lawyer may violate ER 8.4(d) without committing any other ethical violation. *See In re Clark*, 207 Ariz. at 418 ¶¶ 16–17 (finding an ER 8.4(d) violation where an attorney's negligent act of "transferring assets to his professional corporation and notifying another creditor of the transfer may have deprived [his client] of partial recovery on his judgment"). The panel erred as a matter of law by concluding otherwise. To the extent the panel suggests that ER 8.4(d) applies exclusively to egregious and flagrant non-litigation conduct, we disagree. In *Clark*, we did not signal an intent to limit application of ER 8.4(d) to non-litigation conduct prejudicial to the administration of justice and we decline to do so here. Because the panel articulated its erroneous interpretation of ER 8.4(d) in its preliminary analysis of the applicable rules, we presume it applied this standard to all its ER 8.4(d) rulings.

¶36 The panel held that Martinez's comments to juries in *Morris*, *Gallardo*, and *Lynch II* and his conduct in *Beemon* did not violate ER 8.4(d). The panel found that although the statements in *Morris* were improper, they were remote in time and could not support an ER 8.4(d) violation absent another ethics rule violation. The panel concluded that Martinez's invocation of the victim's family's loss in *Gallardo* was proper, and that his persistence with a line of argument in that case despite the trial court repeatedly sustaining defense counsel's objections was attributable to a misunderstanding. The panel determined that Martinez's closing argument in *Lynch II*, which the Bar characterized as personalized and as improperly inviting "the jurors to place themselves in the victim's position," did not violate ER 8.4(d) because the improper comments were stricken as an appropriate remedy. Finally, the panel found that the Bar

failed to prove an ER 8.4(d) violation in *Beemon* based on his attempt to use the defendant's 1984 bank robbery conviction because he had a right to use it.

¶37　　　We conclude Martinez violated ER 8.4(d) for his comments made to juries in *Morris*, *Gallardo*, and *Lynch II*. In *Morris*, this Court cited *State v. Comer*, 165 Ariz. 413, 426 (1990), for the well-settled proposition that a prosecutor "cannot make arguments that appeal to the fears or passions of the jury." 215 Ariz. at 337 ¶ 58. When *Comer* was decided in 1990, Martinez was already admitted to practice in Arizona and, in light of his extensive career as a prosecutor, he should have been aware of *Comer*'s prohibition on improper emotional appeals to a jury when he tried *Morris* in 2005. And after having been chastised in *Morris* for improperly appealing to jurors' fears or passions, he was undoubtedly aware of the prohibition. Yet, when trying *Gallardo* in 2009, in closing argument, Martinez appealed to jurors' emotions, and persisted with a line of argument despite the trial court repeatedly sustaining defense counsel's objections. And Martinez disregarded the prohibition again in 2012 when trying *Lynch II* by asking jurors to put themselves in the victim's place. Even if Martinez's misconduct in *Morris* could be characterized as "isolated"—an unwarranted and charitable description of Martinez's outrageous and highly improper singling out of jurors during argument—his repetition of similar conduct in *Gallardo* and *Lynch II* was at least negligent, which is sufficient to establish an ER 8.4(d) violation.

¶38　　　We conclude, for the reasons discussed, *supra* ¶ 32, that Martinez did not violate ER 8.4(d) in *Beemon* because he did not attempt to use the defendant's 1984 bank robbery conviction for an improper purpose and did not engage in conduct prejudicial to the administration of justice.

## D.　Staleness of Claims

¶39　　　The panel and Martinez emphasize that the age of the allegations militates against a finding of ethical misconduct. We disagree. If anything, what is notable about the age of the claims is the systemic failure to timely scrutinize Martinez's conduct under the ethical rules.

¶40　　　The purpose of lawyer discipline is not to punish the lawyer but to protect the public, the legal profession, and the justice system. *See, e.g.*, *In re Abrams*, 227 Ariz. 248, 250–51 ¶ 15 (2011). Lawyer discipline also "deter[s] the [disciplined] attorney and others from engaging in the same or similar misconduct." *In re Alexander*, 232 Ariz. at 15 ¶ 63; *see also In re Alcorn & Feola*, 202 Ariz. 62, 75 ¶ 48 (2002) ("Perhaps more important than rehabilitation of an individual attorney, however, is the value of discipline as a deterrent to other attorneys and as a process that maintains 'the integrity of the profession

in the eyes of the public.'" (quoting *In re Fioramonti*, 176 Ariz. 182, 187 (1993))). The prompt reporting of ethical violations serves to both protect the public and rehabilitate the lawyer. However, where the misconduct involves repeated violations, older violations are subject to scrutiny and are relevant to mental state findings. Thus, there is no statute of limitations for disciplinary actions concerning ethical violations and the vintage of the alleged misconduct does not necessarily diminish the seriousness of the claims or the necessity for proper redress.

¶41 The panel and Martinez also note that despite criticism from this Court and others concerning his conduct as a prosecutor, save one case (*Beemon*), courts have demurred in referring him to the State Bar for disciplinary action.[2] But the failure of a court to report is not evidence that an ethical violation did not occur. Such inaction does not tie our hands in enforcing the ethical rules.

### E. Prosecutorial Misconduct versus Ethical Misconduct

¶42 This case presents an opportunity to provide guidance to courts by clarifying the difference between prosecutorial misconduct that may necessitate a new trial and a prosecutor's conduct that violates the ethical rules.

¶43 To succeed on a claim of prosecutorial misconduct, a defendant "must show that the prosecutor's actions amounted to misconduct and that there is a 'reasonable likelihood . . . that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial.'" *Hulsey*, 243 Ariz. at 388 ¶ 89 (quoting *State v. Anderson*, 210 Ariz. 327, 340–41 ¶ 45 (2005)).

¶44 Martinez argues that prosecutorial misconduct does not necessarily equate to ethical misconduct because prosecutorial misconduct may encompass negligent acts. The Bar contends, citing *Hulsey*, that the distinction between prosecutorial misconduct and ethical misconduct is that prosecutorial misconduct involves a prosecutor's ethical misconduct that likely deprives a defendant of a fair trial. Implicit in the Bar's reasoning is that all prosecutorial misconduct claims involve ethical misconduct.

¶45 The Bar errs in presuming that prosecutorial misconduct always equates to ethical misconduct. The term "prosecutorial misconduct" broadly encompasses any conduct that infringes a defendant's constitutional rights. It sweeps in prosecutorial

---

[2] As noted, *supra* ¶ 18, the court of appeals has recently referred Martinez to the Bar for review of his conduct in *Arias*.

conduct ranging from inadvertent error or innocent mistake to intentional misconduct. Thus, because a prosecutor's error may not implicate an ethical rule, the Bar's position blurs the line between prosecutorial misconduct and ethical misconduct. *See, e.g.*, *State v. Valdez*, 160 Ariz. 9, 14 (1989), *overruled on other grounds by Krone v. Hotham*, 181 Ariz. 364 (1995) (noting that "in cases where there has been misconduct of either the prosecutor or defense counsel, but reversal is not required, the proper remedy will be affirmance, followed by institution of bar disciplinary proceedings against the offending lawyer, *if such proceedings are warranted*" (emphasis added)).

¶46        The American Bar Association (ABA) has recognized this distinction and urged courts in criminal cases, "when reviewing the conduct of prosecutors[,] to differentiate between 'error' and 'prosecutorial misconduct'":

> The term "prosecutorial misconduct" has become a term of art in criminal law that is sometimes used to describe conduct by the government that violates a defendant's rights whether or not that conduct was or should have been known by the prosecutor to be improper and whether or not the prosecutor intended to violate the Constitution or any other legal or ethical requirement. But, the term is not the equivalent of a finding of professional misconduct on the part of the prosecuting attorney. Nor does every finding of "prosecutorial misconduct" involve a finding that the prosecutor has engaged in misconduct (as opposed to agents acting in cooperation with, or under the prosecutor's control) or that any actions or omissions on the part of the prosecution involved maliciousness, knowing, intentional or even reckless wrongdoing. "Prosecutorial misconduct" is a term understood to apply to a wide range of claims, some of which may be sustained by the mere unintentional and good faith failure of a police agency to provide to the prosecutor information favorable to the accused to which the accused is entitled. Nevertheless, a finding of "prosecutorial misconduct" may be perceived as reflecting intentional wrongdoing, or even professional misconduct, even in cases where such a perception is entirely unwarranted.

ABA Recommendation 100B (2010). Thus, the ABA recognizes "that there can be a difference between misconduct and error, and it urges courts, when reviewing claims that prosecutors have violated a constitutional or legal standard, to choose the term that more accurately describes the prosecutorial conduct while fully protecting a defendant's rights." *Id.*

¶47        We are persuaded by the ABA's reasoning and, thus, adopt its approach to distinguishing prosecutorial error and ethical misconduct. *Cf. In re Scholl*, 200 Ariz. 222,

224 ¶ 9 (2001) (noting that this Court "views the ABA *Standards* [*for Imposing Lawyer Sanctions*] as a suitable guideline" in determining the proper extent of lawyer discipline); *see also Valdez*, 160 Ariz. at 14 (implicitly recognizing that every case of prosecutorial misconduct does not warrant bar disciplinary proceedings). When reviewing the conduct of prosecutors in the context of "prosecutorial misconduct" claims, courts should differentiate between "error," which may not necessarily imply a concurrent ethical rules violation, and "misconduct," which may suggest an ethical violation. For purposes of evaluating the merits of a "prosecutorial misconduct" claim, any finding of error or misconduct may entitle a defendant to relief, but courts should not conflate that inquiry with the collateral issue of a prosecutor's ethical culpability.

## V.    Sanction

¶48        The Bar requests that we impose on Martinez a sanction of reprimand. We agree that, in these circumstances, reprimand is the appropriate sanction.

¶49        We determine appropriate disciplinary sanctions in conjunction with the ABA's *Standards for Imposing Lawyer Sanctions* ("Standards"). *In re Alexander*, 232 Ariz. at 13 ¶ 49. "The sanction . . . is tailored to the unique circumstances of the case." *Id.* "Standard 3.0 lists four factors for courts to examine in deciding an appropriate sanction: '(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors.'" *Id.*

### A.    Duty

¶50        Martinez's ethical misconduct involves his comments to juries in *Morris*, *Gallardo*, and *Lynch II*, which we conclude violated ER 8.4(d), because it was prejudicial to the administration of justice. Consequently, Standards 7.3 and 6.23, applicable to cases involving a lawyer's violation of professional duty which causes injury to a client, the public, or the legal system, inform our analysis.

### B.    Mental State

¶51        Martinez's mental state when he violated his duties to the public and the legal system determines, in part, the presumptive sanction. *In re Phillips*, 226 Ariz. 112, 117–18 ¶ 31 (2010). The Standards "recommend more severe sanctions for intentional or knowing misconduct than negligent misconduct, which threatens less harm." *In re Alexander*, 232 Ariz. at 13–14 ¶ 52.

¶52        Martinez's comments to juries in *Morris*, *Gallardo*, and *Lynch II*, in which he singled out jurors, encouraged them to put themselves in place of the victims to elicit sympathy for the victims and fear of the defendants, or persisted with a line of argument over defense counsel's sustained objections, were at least negligent (the theory the Bar urges here) in view of *Comer*'s prohibition on improper appeal to juries and Martinez's experience as a prosecutor. *Supra* ¶ 37.

### C.      Potential or Actual Injury

¶53        Standards 7.3 and 6.23 each provide that a reprimand is presumptive if a lawyer's negligent conduct injures or potentially injures the public or the legal system. Martinez argues that his conduct did not constitute ethical misconduct and, therefore, could not cause potential or actual injury. We disagree. Martinez's comments to juries in *Morris*, *Gallardo*, and *Lynch II*, and his disregard of defense counsel's sustained objections in *Gallardo*, at least potentially caused harm to the public and the legal system. As a prosecutor, Martinez's serial improper appeals to juries to elicit sympathy for victims and fear of defendants and his failure to comply with a court ruling jeopardized the integrity of the legal system. That Martinez's negligent conduct did not result in reversal of criminal convictions does not absolve him of ethical culpability for potential systemic injuries.

### D.      Aggravating and Mitigating Factors

¶54        Martinez's negligent misconduct injured the public and the legal system. Thus, the presumptive sanction is reprimand. *See* Standard 7.3 (providing that a reprimand "is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system"); Standard 6.23 (providing that a reprimand "is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding"). The sanction to be imposed, however, requires consideration of relevant aggravating and mitigating factors. *See* Standard 9.1.

¶55        The Bar argues that the applicable aggravating factors are Standard 9.22(c), pattern of misconduct; Standard 9.22(d), multiple offenses; and Standard 9.22(i), substantial experience in the practice of law. The Bar identifies the applicable mitigating factors as Standard 9.32(b), absence of dishonest or selfish motive; and Standard 9.32(e), full and free disclosure to disciplinary board and cooperative attitude toward proceedings. Aggravating factors must be supported by reasonable evidence. *In re*

*Abrams*, 227 Ariz. at 252 ¶ 27. We agree with the Bar's identification of applicable aggravating and mitigating factors.

### E.     Appropriate Sanction

**¶56**     An appropriate sanction advances the primary objectives of lawyer discipline "(1) to protect the public and the courts and (2) to deter the [disciplined] attorney and others from engaging in the same or similar misconduct." *In re Alexander*, 232 Ariz. at 15 ¶ 63 (quoting *In re Zawada*, 208 Ariz. 232, 236 ¶ 12 (2004). "The sanction is not intended to punish the disciplined lawyer." *Id.*

**¶57**     The Bar requests a sanction of reprimand. In considering the aggravating and mitigating factors and the purpose of lawyer discipline, we conclude that the presumptive sanction of reprimand is warranted. Martinez's repetitious misconduct in addressing jurors in trial in a manner inconsistent with established case law and disregard of sustained objections was prejudicial to the administration of justice and is inexcusable given his substantial experience as a prosecutor and repeated court warnings to cease such conduct. But we also consider that this is Martinez's first disciplinary sanction after 36 years as a member of the Bar, including serving 32 years as a prosecutor. For any lawyer, a reprimand, particularly as a first disciplinary sanction, is a serious consequence and embodies risk of a more serious sanction if that lawyer again fails to conform to the ethical rules. *See, e.g.*, *In re Brown*, 184 Ariz. 480, 484 (1996) ("[M]ore severe sanctions are appropriate where a lawyer violates the terms of a prior disciplinary order or engages in further acts of the same or similar misconduct for which he or she has already been reprimanded."). This sanction is not intended to punish Martinez, but rather to protect the public and the courts and to deter Martinez and others from engaging in similar misconduct. A reprimand serves these objectives.

**¶58**     We also note the absence of a dishonest or selfish motive and Martinez's cooperation with the disciplinary panel. Despite this mitigation, we decline to reduce the presumptive sanction of reprimand.

### CONCLUSION

**¶59**     Martinez committed professional misconduct by violating ER 8.4(d). We therefore impose a sanction of reprimand and vacate the part of the panel's supplemental decision dismissing with prejudice the allegation of violations of ER 8.4(d). All other parts of the supplemental decision remain in effect. Martinez shall pay the costs and expenses of the proceeding.